### Richmond

GEORGIA PACIFIC CORPORATION

V.

CLAUDE FRANKLIN DANCY

No. 2176-92-2

Decided September 28, 1993

COUNSEL

Cecil H. Creasey, Jr. (Sands, Anderson, Marks & Miller, on briefs), for appellant.

Brian J. Cusce (David B. Rheingold; Walter Emroch & Associates, on brief), for appellee.

OPINION

**COLEMAN, J.**—Georgia Pacific Corporation appeals a workers' compensation award that granted Claude Franklin Dancy temporary total disability benefits for an occupational injury that he sustained in May, 1985. Georgia Pacific contends that the commission denied it due process by affirming the deputy commissioner's award on a theory not alleged by the claimant and not addressed by the deputy commissioner. Georgia Pacific also contends that the commission erred in finding that Dancy is totally, rather than partially, disabled and, therefore, incorrectly relieved him of his burden to prove that he had made a reasonable effort to market his residual work capacity.

Dancy cross-appeals the commission's finding that Dr. Hallett Mathews was not an authorized physician and, therefore, Georgia Pacific was not required to reimburse Dancy for the costs of Dr. Mathews' medical services. For the reasons that follow, we affirm the commission's decision.

On May 20, 1985, Dancy sustained a compensable injury to both legs, for which he received temporary total disability benefits through July 8, 1987. On July 9, 1987, Dr. John Cardea, Dancy's treating physician, rated a fifteen percent permanent loss of use in Dancy's right leg and a fifty percent permanent loss of use in his left leg. Dr. Cardea reported that Dancy could perform light work requiring no climbing, stooping or bending, but that Dancy would require further surgery and rehabilitation training. Based on Dr. Cardea's report,

Georgia Pacific executed a supplemental memorandum agreement awarding Dancy permanent partial disability benefits under Code § 65.1-56 (now Code § 65.2-503) for the loss of use of his right leg. The payments for Dancy's permanent partial disability began on July 9, 1987, and ended in January 1988.

On December 7, 1987, Dr. Cardea re-examined Dancy and rated the permanent loss of use to his left leg at one hundred percent. In his report, Dr. Cardea stated, "I do not think that [Dancy] is ever going to return to work under these circumstances . . . unless they put him in a work hardening program." Dr. Cardea recommended that Dancy be released to a sedentary job and that he receive "advanced exercises." Georgia Pacific requested an independent medical evaluation by Dr. Hallett Mathews, who examined Dancy on June 29, 1988. Dr. Mathews, in a report dated July 6, 1988, concurred in Dr. Cardea's conclusions. Accordingly, Georgia Pacific executed a second memorandum of agreement awarding Dancy permanent disability payments under Code § 65.1-56 (now Code § 65.2-503) for total loss of use of the left leg. Those additional payments began on January 9, 1988, and continued until May, 1991.

After the permanent benefits had been paid, Dancy filed an application on June 4, 1991, requesting resumption of temporary total disability benefits, which the deputy commissioner considered as an application based on a change of condition under Code § 65.1-99 (now Code § 65.2-708). The "change of condition" alleged by Dancy was that his scheduled permanent disability benefits had ceased but his disability to work continued.

At the December 18, 1991, deputy commissioner's hearing, the parties presented evidence as to whether Dancy continued to be totally disabled. The employer defended on the ground that Dancy was not totally disabled. Whether Dancy's disability was partial, requiring him to market any residual work capacity, was the primary issue addressed. Dr. Cardea reported that, based on his November 5, 1991 examination of Dancy, Dancy's injuries "may preclude him from doing overt, heavy labor but may not preclude non-laboring type of job," but that he "would not recommend a release to . . . work . . . until [Dancy] had been through a complete work hardening program." At another point, Dr. Cardea stated, "I do not feel [Dancy] is able to return to any type of laboring duty at this time without a work hardening program." In a letter to the employer, Dr. Cardea explained that the release would be to do sedentary work, not light work. Dr. Mathews, who had exam-

ined and treated Dancy, reported in an October 28, 1991 letter that, as a result of the 1985 injury to Dancy, he continued to have a one hundred percent disability in his left leg and fifteen percent disability in his right leg. Dr. Mathews concluded that Dancy was not suitable for any type of gainful employment because of chronic pain, stating, "[e]ven in a wheelchair, [Dancy] would be an absolutely miserable employee."

Dancy had not worked while he was receiving compensation for his permanent loss. He had attempted light duty work for three days in 1987, which he was unable to perform due to pain and swelling in his legs. He has made no effort to obtain work since 1988, contending that he has been totally disabled and remains so until such time as rehabilitation might enable him to do sedentary work.

The deputy commissioner found that Dr. Cardea had released Dancy to do sedentary work on the condition that he undergo a work hardening program. Because no evidence was presented that Georgia Pacific had offered or provided Dancy a work hardening program or rehabilitative services, the deputy commissioner found that Dancy had established a change of condition under Code § 65.1-99 (now Code § 65.2-708) by proving that he continued to be totally disabled. The deputy awarded Dancy temporary total disability benefits.

Upon review, the commission affirmed, finding from the evidence that Dancy remained totally disabled. The commission noted, however, in clarifying the basis for the deputy commissioner's holding, that, based on the decision in *Armstrong Furniture v. Elder,* 4 Va. App. 238, 244, 356 S.E.2d 614, 617 (1987), the cessation of scheduled permanent disability benefits, standing alone, does not constitute a change in condition under Code § 65.1-99 (now Code § 65.2-708(A)). The commission went on to hold that the claimant had established a right to a resumption of temporary total disability benefits under Code § 65.1-56 (now Code § 65.2-503) by proving that without his having the benefit of rehabilitative services in order to be able to return to work, his partial incapacity was totally disabling. The commission awarded Dancy temporary total disability benefits based on a finding that Dancy's partial disability caused him to be totally disabled under Code § 65.1-56 (now Code § 65.2-503).

The commission also found that Dancy's treating physician was Dr. Cardea, that Dr. Mathews was not an authorized physician, and that Georgia Pacific was not required to pay for Dr. Mathews' medical ser-

vices, except for the June 29, 1988 examination of Dancy that Georgia Pacific had requested.

## I. DUE PROCESS

■ The commission did not deny Georgia Pacific due process by affirming Dancy's award of disability benefits based upon a theory different from that adopted by the deputy commissioner. Due process requires notice that is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Oak Hill Nursing Home, Inc. v. Back,* 221 Va. 411, 416-17, 270 S.E.2d 723, 726 (1980) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314-15 (1950)); *Sergio's Pizza v. Soncini,* 1 Va. App. 370, 373, 339 S.E.2d 204, 205 (1986).

Georgia Pacific contends that because the deputy commissioner awarded benefits based on the theory of a change in condition under Code § 65.1-99, it did not have adequate notice and a fair opportunity, upon review, to present evidence or argument in defense of a claim based on the theory that Dancy's partial disability was totally disabling because he would be required to complete a work hardening program in order to return to work. Specifically, Georgia Pacific contends that it could only have expected on review to be required to show that Dancy had not proven a "change in condition" by proving that he had ceased to receive benefits for permanent partial disability under Code § 65.1-56. Thus, Georgia Pacific argues, it had no way of anticipating, nor could it show at the review stage, whether Dancy had received or needed rehabilitative services, the lack of which was essential to the deputy commissioner's and commission's holding that his partial disability was totally disabling under Code § 65.1-56.

Georgia Pacific's contentions are without merit. Dancy's application for a resumption of "temporary total disability benefits" was on the theory that he "remains disabled from any gainful employment." His application gave the employer notice that he based his claim on the theory that he was not able to work. Georgia Pacific was not misled, nor was any greater burden placed on it by the deputy commissioner's characterization of Dancy's application as being for a change of condition under Code § 65.1-99, rather than for a resumption of benefits under Code § 65.1-56. Even though the deputy commissioner may have erroneously concluded that Code § 65.1-99 was invoked, the deputy correctly defined the issues and made the necessary findings

of fact and conclusions of law for entitlement to a resumption of benefits under Code § 65.1-56. The deputy commissioner did not hold that Dancy was entitled to a resumption of benefits based on a change in condition simply by proving that his scheduled benefits had ceased. *See Armstrong Furniture,* 4 Va. App. at 244-45, 356 S.E.2d at 617. The deputy made clear that the employer was defending on the ground that "the claimant is not disabled to the degree he is claiming, and the hearing was conducted on that basis."

Furthermore, it was clear at the deputy commissioner's hearing and on review that Dancy's claim that he was totally disabled was based on a partial disability that prevented him "from [doing] any gainful employment." His claim that his partial disability was totally disabling necessarily depended on whether he was required to have rehabilitative services in order to return to any gainful employment or whether he had made, or was required to make, a reasonable effort to market his residual capacity to work. Thus, Georgia Pacific's failure to present evidence regarding Dancy's need for a work hardening program did not result from a lack of notice that this was an issue or from the deputy's erroneous characterization of the application as being for a "change in condition." When a claim is based on evidence of partial disability, as the employer knew that Dancy's was, whether the claimant had made a reasonable effort to market his residual capacity or was entitled to rehabilitative services are questions that the claimant must address. The issue defined and addressed by the deputy and which was before the commission was whether Dancy continued to be totally disabled, and whether this issue was heard as an application for a "changed condition" or to resume disability benefits did not affect the proceeding.

The commission did not deny Georgia Pacific due process by affirming an award on a theory not alleged or addressed at the deputy commissioner's hearing. Georgia Pacific received fair notice and an opportunity to litigate the issues that the commission considered in making its ruling.

## II. TOTAL DISABILITY

The commission did not err in finding that Dancy continued to be totally disabled. On appeal, we view the evidence in the light most favorable to the prevailing party. *Rucker v. Thrift Transfer, Inc.,* 1 Va. App. 417, 420, 339 S.E.2d 561, 562 (1986). Findings of fact made by the commission are binding on appeal if they are supported by credi-

ble evidence. *Armstrong Furniture,* 4 Va. App. at 247, 356 S.E.2d at 619.

Credible evidence supports the finding that Dancy continued to be totally disabled after the payments under the last memorandum of agreement expired in May, 1991. On December 7, 1987, Dr. Cardea reported that Dancy had a fifteen percent permanent loss of use of his right leg and one hundred percent permanent loss of use of his left leg. Although Dr. Cardea opined that Dancy could perform sedentary work, he also stated that Dancy required rehabilitative treatment before returning to work. After he examined Dancy in November, 1991, Dr. Cardea had the same opinion and made the same recommendations. Dr. Mathews concurred in Dr. Cardea's conclusions after examining Dancy in June 1988. After he examined Dancy again in October 1991, he concluded that Dancy's condition had not changed since 1987. Although at one point, Dr. Cardea seemed to say that Dancy would be required to have rehabilitative services before returning to a light duty "laboring" job, all reports reviewed in their entirety support the commission's conclusion that a work hardening program was a prerequisite to Dancy returning to any sedentary work.

■ No evidence in the record proved that Georgia Pacific offered Dancy any rehabilitative services or that Dancy underwent a work hardening program. Accordingly, the evidence supports the commission's finding that Dancy's partial disability is totally disabling. Because Dancy is totally, not partially, disabled, he is not required to prove that he made a reasonable effort to market his residual work capacity in order to receive temporary total disability benefits. *Cf. National Linen Serv. v. McGuinn,* 8 Va. App. 267, 268, 380 S.E.2d 31, 32 (1989).

### III. TREATING PHYSICIAN

■ Georgia Pacific is not estopped from denying payment of medical treatment rendered by Dr. Mathews after June 1988. The commission found that Dr. Cardea, not Dr. Mathews, was Dancy's treating physician. Under Code § 65.1-88 (now Code § 65.2-603), an employer is not required to pay for unauthorized medical treatment received by an employee absent an emergency or other good cause. *Rucker,* 1 Va. App. at 420, 339 S.E.2d at 563. An employer is not responsible for the cost of treatment by a second physician where the employee changed the physician without authorization from the employer or the

commission. *Jackson v. Loveland Distribution Co.,* 1 Va. App. 57, 59, 334 S.E.2d 148, 149 (1985).

Factual findings of the commission will not be disturbed on appeal unless plainly wrong or without credible evidence to support them. *Armstrong Furniture,* 4 Va. App. at 247, 356 S.E.2d at 619. Dr. Cardea was Dancy's treating physician. Georgia Pacific requested that Dr. Mathews examine Dancy in order to obtain an independent medical opinion that would confirm or rebut Dr. Cardea's conclusions as to the extent of Dancy's disability. No evidence was presented that Georgia Pacific intended or authorized Dr. Mathews to continue to treat Dancy.

Dancy contends that Georgia Pacific is estopped from denying that Dr. Mathews' treatment was authorized because Georgia Pacific represented to Dancy that it would pay for Dr. Mathews' treatments after June, 1988, and Dancy detrimentally relied on those representations. *See Rucker,* 1 Va. App. at 420, 339 S.E.2d at 562. No evidence was presented, however, that Georgia Pacific represented to Dancy that it would pay for Dr. Mathews' treatments. The fact that Georgia Pacific requested Dr. Mathews' independent opinion six months after Dr. Cardea released Dancy to sedentary work does not constitute a representation by Georgia Pacific that it would authorize Dr. Mathews to treat Dancy. Furthermore, no evidence was presented, as Dancy suggests, that Georgia Pacific knowingly acquiesced in Dr. Mathews' treatment of Dancy after the June, 1988, examination.

For these reasons, we affirm the commission's finding that Dr. Cardea was Dancy's treating physician and that Georgia Pacific, therefore, is not required to pay for treatments rendered by Dr. Mathews after the June, 1988, examination.

*Affirmed.*

Willis, J., and Elder, J., concurred.