Present:  All the Justices

SOUTHERN EXPRESS, ET AL.

v.  Record No. 980453  OPINION BY JUSTICE CYNTHIA D. KINSER
                                          January 8, 1999
CLARA LOUISE GREEN

FROM THE COURT OF APPEALS OF VIRGINIA


In this appeal, we decide whether chilblains that the
claimant suffered as a result of being exposed to cold
temperature in a walk-in cooler during a four-hour period
constitute an "injury by accident" under the Virginia Workers'
Compensation Act (the Act).  Because the claimant proved that
she sustained the injury at a particular time and place and
upon a particular occasion, that it was caused by an
identifiable incident, and that it resulted in a structural
change in her body, we will affirm the judgment of the Court
of Appeals that the injury is compensable under the Act.

I.

Clara Louise Green was an employee at a Southern Express
convenience store.  When Green arrived at work on June 22,
1996, John Patrick Vaillant, the store manager, asked a co-
worker to take Green inside the store's walk-in cooler.[1]  He
instructed the co-worker to show Green what tasks needed to be

_____

[1]  The cooler's design included a series of glass doors on
the front, shelving units behind the glass doors, and a walk-
in room behind the doors and shelves, which was also cold.

completed in the cooler and how to perform those tasks. Green had never before worked in the cooler. The training session in the cooler lasted approximately 30 to 45 minutes.

Later, Vaillant assigned Green to work in the cooler stocking "beer" and "cokes." When Green went back inside the cooler, she was wearing a short-sleeved shirt and an apron since she had not anticipated that she would be working in the cooler. When Green asked Vaillant for a pair of gloves, he authorized Green to use a pair out of the store's inventory. However, Green chose not to do so.

Green testified that, in addition to the time spent in the cooler during the training session, she worked in the cooler stocking drinks from 2:00 o'clock a.m. until 6:00 o'clock a.m. without taking a single break. She further stated that, at some point during this period of time, she tried to leave the cooler but was unable to open the door. She attempted to get someone's attention by knocking on the window of the cooler, but no one responded.

Vaillant's testimony conflicted with Green's on this last point. He was present at the Southern Express store during Green's shift of work on the morning in question and recalled Green coming out of the cooler to take at least one break and possibly more. He further testified that the cooler door had

no locking device and that it could be opened from both inside and outside at all times.

Green stated that, after finishing her work in the cooler, she was "cold and shivering" with her hands being "all balled up." She testified that her face also had sores on it. Vaillant, however, testified that Green did not mention any injury to him when she left work at the end of her shift around 6:00 a.m. Green did not return to work at the Southern Express store after she left that morning.[2]

The record reflects that Green received treatment from several doctors for her injury. On the morning of June 23, 1996, Green saw Dr. Gary McGowan at Henrico Doctors' Hospital for "an evaluation of pain in her hands, left forearm and left elbow" in connection with an injury sustained while "lift[ing] beer cases in the cold freezer for about 3-4 hours." Dr. McGowan diagnosed a left hand/forearm strain and advised Green to wear gloves if she were exposed to cold temperatures at work again. Two days later, Dr. Lerla Joseph of the Charles

---

[2] The record contains conflicting evidence regarding Green's period of employment at the Southern Express store. Green claims that she began working there in late May 1996 and worked until June 9, 1996. Vaillant, however, testified that Green's period of employment ran from June 17 through 22, 1996. In her claim for workers' compensation benefits, Green originally listed her date of injury as June 22, 1996, but later changed it to June 9, 1996.

City Medical Group, Inc., examined Green and recommended that Green limit her lifting, bending, or cold storage work.

On July 1, 1996, Dr. Marc Jay Pinsky treated Green. At that time, Green complained of "pain, burning, and stiffness in [her] hands and feet" as a result of having worked several hours in a cooler without "proper protection or a break for warm-up." Dr. Pinsky diagnosed "chilbains [sic] [secondary] to longterm exposure to cold temperature."[3] He advised Green to avoid further exposure to the cold.

Next, on July 9, 1996, Green saw Dr. E.M. Hudgins of the Dermatology Associates of Virginia, P.C. In a letter to Dr. Pinsky, Dr. Hudgins opined that Green "has had a mold cold injury consistent with chilblains."

Green filed a claim for workers' compensation benefits on July 10, 1996. A deputy commissioner of the Virginia Workers' Compensation Commission (Commission) denied Green's claim on the basis that "there was no sudden precipitating event, no accident which arose out of and in the course of employment." Instead, the deputy commissioner found that her injury

---

[3] Chilblains are "[a] form of cold injury characterized by localized erythema and sometimes blistering. The affected area itches, may be painful, and may progress to crusted ulcerations. The cause is thought to be prolonged constriction of arterioles in reaction to exposure to cold and dampness." Taber's Cyclopedic Medical Dictionary 367 (17th ed. 1993).

4

resulted from "continuous exposure over a period of time."

Upon Green's request for review, the Commission reversed the

deputy commissioner's decision and awarded benefits to Green.

Southern Express then appealed the Commission's decision to

the Court of Appeals of Virginia.  A panel of the Court of

Appeals affirmed the award of benefits on the basis that "a

condition resulting from exposure to extreme temperatures may

still constitute an 'injury by accident.'"  Southern Express

v. Green, 26 Va. App. 439, 445, 495 S.E.2d 500, 503 (1998).

We awarded Southern Express this appeal.

## II.

When Green filed her claim for workers' compensation

benefits, she alleged an "injury by accident" under Code

§ 65.2-101.  This section states that "'[i]njury' means only

injury by accident arising out of and in the course of the

employment . . . ."[4]  The Act does not, however, specifically

define the term "injury by accident."  Consequently, the

phrase has been the subject of judicial interpretation.  See

Virginia Elec. & Power Co. v. Cogbill, 223 Va. 354, 288 S.E.2d

485 (1982), and Badische Corp. v. Starks, 221 Va. 910, 275

---

[4]  In the definition of "injury," Code § 65.2-101 also includes "occupational disease as defined in Chapter 4 (§ 65.2-400 et seq.)."  Green does not, however, contend that her chilblains constitute an occupational disease under the Act.

5

S.E.2d 605 (1981), for a survey of cases discussing the "injury by accident" requirement.

"It is apparent from the language employed by the drafters of the Act that it was originally intended to provide coverage for the most frequently recurring kinds of industrial accidents, e.g., injuries immediately resulting from hazards of the workplace such as blows from falling objects . . . [or] falls from ladders . . . ." Morris v. Morris, 238 Va. 578, 585, 385 S.E.2d 858, 862 (1989). The more difficult issue through the years has been "whether an injury resulting from repetitive trauma, continuing mental or physical stress, or other cumulative events, amounts to an 'injury by accident' within the meaning of [the Act] . . . ." Id. at 581, 385 S.E.2d at 859-60.

In Morris, a case relied upon by Southern Express, the Court addressed this issue and reiterated the parameters of an "injury by accident." We considered the claims of three separate workers, two of whom had sustained myocardial infarctions and a third worker who had a ruptured cervical disc. One of the workers who had a myocardial infarction had been lifting cartons of fiberglass, weighing approximately 50 pounds each, for about 45 minutes. The second employee with the same type of injury had been installing ceiling panels weighing 30 to 35 pounds each over a period of approximately

6

two and one-half hours.  The worker with the ruptured disc injury had been unloading steel doors for approximately an hour and a half.  His injury was not diagnosed until several weeks later, but the two employees with myocardial infarctions were each taken to hospitals for treatment on the day of the injury.

We vacated all three awards of compensation on the basis that the claimants had not carried the burden of establishing an "injury by accident."  Although each respective injury "made its appearance suddenly 'at a particular time and upon a particular occasion,'" we concluded that each claimant had failed to prove "that the cause of his injury was an identifiable incident or sudden precipitating event and that it resulted in an obvious sudden mechanical or structural change in the body."  Morris, 238 Va. at 589, 385 S.E.2d at 864-65 (quoting The Lane Co., Inc. v. Saunders, 229 Va. 196, 199, 326 S.E.2d 702, 703 (1985) (emphasis added)).  We specifically held "that injuries resulting from repetitive trauma, continuing mental or physical stress, or other cumulative events, as well as injuries sustained at an unknown time, are not 'injuries by accident.'"  Morris, 238 Va. at 589, 385 S.E.2d at 865.

In our analysis of the term "injury by accident" in Morris, we relied upon language from a law review article that

7

we had previously quoted with approval in Aistrop v. Blue

Diamond Coal Co., Inc., 181 Va. 287, 293, 24 S.E.2d 546, 548

(1943) (citations omitted):

> 'The injury, to be regarded as "by accident," must be received *** at a particular time and in a particular place and by a particular accident.  And the accident must be something the date of which can be fixed.  It is not enough that the injury shall make its appearance suddenly at a particular time and upon a particular occasion.'  In other words, the 'incident,' the act done or condition encountered, 'must be shown to have occurred at some reasonably definite time'.
>     On the other hand, as the author says, '*** injury of gradual growth, *** not the result of some particular piece of work done or condition encountered on a definite occasion, but caused by the cumulative effect of many acts done or many exposures to conditions prevalent in the work, no one of which can be identified as the cause of the harm, is definitely excluded from compensation.'

(quoting Francis H. Bohlen, A Problem in the Drafting of

Workmen's Compensation Acts, 25 Harv. L. Rev. 328, 342-43

(1912)).

Thus, Morris and Aistrop teach that, to establish an

"injury by accident," a claimant must prove (1) that the

injury appeared suddenly at a particular time and place and

upon a particular occasion, (2) that it was caused by an

identifiable incident or sudden precipitating event, and (3)

that it resulted in an obvious mechanical or structural change

in the human body.  Accord Cogbill, 223 Va. 354, 288 S.E.2d

485; Starks, 221 Va. 910, 275 S.E.2d 605.  Measuring these

elements of proof against the facts as recited in Morris, it

8

is evident that those claimants failed to prove that an identifiable incident or event at work caused their injuries. The claimants asserted that the cause of their respective injuries was the particular piece of work that they were performing on the days when the injuries first manifested themselves, but evidence of causation, especially medical evidence, was noticeably absent.

The question of causation was also the critical issue in Byrd v. Stonega Coke & Coal Co., 182 Va. 212, 28 S.E.2d 725 (1944), a case relied upon by the Court of Appeals. Contrary to Southern Express's assertion that the Court of Appeals used the decision in Byrd to carve out an exception to the principles enunciated in Morris for all exposure cases, we find no such deviation from Morris. Nor do we perceive any tension between those two decisions as asserted by Southern Express.

In Byrd, the employee collapsed suddenly and died after having pulled coke out of a hot oven for more than ten hours. The employer conceded that the employee was exposed to heat of a much higher degree than that to which he otherwise would have been exposed, but denied that there was a causal connection between the hazards of the job and the employee's death. The record contained medical evidence from five doctors, which we summarized by stating that all the doctors

9

agreed that acute heart failure was the immediate cause of the employee's death and that exposure to abnormal heat may affect the heart.  However, we acknowledged that the employee had only some of the usual symptoms of heat stroke and that two of the doctors did not state whether the excessive heat contributed to the employee's death.  We concluded that the employee's death "was the result of the conditions under which [he] was required to perform the duties of his employment." Byrd, 182 Va. at 221, 28 S.E.2d at 729.  We also stated that "if . . . injury or death results from, or is hastened by, conditions of employment exposing the employee to hazards to a degree beyond that of the public at large, the injury or death is construed to be accidental within the meaning of the [Act]."  Id. at 216, 28 S.E.2d at 727.

The Court in Byrd did not discuss whether injuries caused by repetitive trauma, continuing mental or physical stress, or other such cumulative occurrences satisfy the "injury by accident" requirement.  Such an inquiry was not the focus of the parties or the Court for obvious reasons.  The employee's death occurred at a particular time and place and resulted in an obvious change in his body.  Moreover, the fact that the identifiable event, the exposure to extreme heat, was not disputed is especially significant for the present case.  The only contested issue was whether the exposure to the heat

caused the employee's collapse and death. Although the Court in Byrd did not specifically identify the elements of proof later enunciated in Morris, the evidence, nevertheless, satisfied those elements.[5]

Turning now to the facts of the present case and using the elements of proof outlined in Morris, we find that Green established an "injury by accident." Green's chilblains first appeared during the time that she spent in the cooler, thus at a particular time and place and upon a particular occasion, and resulted in a structural change in her body. She testified that her face had sores on it and her hands were "all balled up" after she finished her work in the cooler. In fact, she sought medical treatment on the morning of June 23, 1996. At least two of the doctors who treated Green diagnosed chilblains resulting from Green's exposure to cold temperature. Southern Express does not contest that Green suffered chilblains and that the cause of the chilblains was Green's exposure to cold temperature during her work in the cooler.

The only remaining question, the one that Southern Express does challenge, is whether exposure to cold temperature in a cooler for approximately four hours during a

---

[5] Notably, the Court in Byrd had the benefit of the decision in Aistrop, which discussed the same principles as

11

shift of work constitutes an identifiable event or incident. Citing Morris, Southern Express argues that such a four-hour exposure to the cold is not an event "bounded by rigid temporal precision." 238 Va. at 589, 385 S.E.2d at 864. Rather, Southern Express asserts that Green's injury resulted from repetitive trauma, continuing physical stress, or a cumulative event. We do not agree.

The evidence in this case shows that Green's chilblains were not an "injury of gradual growth . . . caused by the cumulative effect of many acts done or many exposures to conditions prevalent in the work, no one of which can be identified as the cause of the harm . . . ." Aistrop, 181 Va. at 293, 24 S.E.2d at 548. (Emphasis added). Instead, the chilblains were "the result of some particular piece of work done or condition encountered on a definite occasion . . . ." Id. In other words, Green's chilblains resulted from a single exposure to cold temperature on a definite occasion during the performance of a specific piece of work, i.e., an "identifiable incident." Morris, 238 Va. at 589, 385 S.E.2d at 865. It was not caused by repeated exposures over a period of months or years.

For these reasons, we will affirm the judgment of the Court of Appeals.

_____

those set forth in Morris.

<u>Affirmed</u>.