COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, McClanahan and Alston
Argued at Alexandria, Virginia


FAMILY DOLLAR STORES, INC. AND
  INDEMNITY INSURANCE COMPANY
  OF NORTH AMERICA

                                               MEMORANDUM OPINION[*] BY
v.      Record No. 0814-10-4              JUDGE ROBERT J. HUMPHREYS
                                               DECEMBER 21, 2010

JACKIE JAMES PRESGRAVES


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Angela F. Gibbs (Steven H. Theisen; Midkiff, Muncie & Ross,
              P.C., on brief), for appellants.

              Robert B. Adams (Gammon & Grange, P.C., on brief), for appellee.


       Family Dollar Stores, Inc. and Indemnity Insurance Company of North America

("employer") appeal a decision of the Virginia Workers' Compensation Commission

("commission") awarding temporary total disability benefits beginning April 23, 2008, and

continuing to Jackie James Presgraves ("Presgraves") based on its finding that Presgraves

sustained an injury by accident that arose out of and in the course of his employment, that the

medical evidence supported the periods of disability, that the disability and medical treatment

were related to the work accident, and that Presgraves sustained an injury to his lumbar spine and

cervical spine in the work accident.[1]  For the following reasons, we affirm the commission's

findings and award.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Presgraves did not appeal the deputy commissioner's finding that he was not entitled to
wage loss benefits between January 22, 2008, and April 23, 2008, due to insufficient evidence of
disability and marketing efforts, and thus it was final before the commission.

I.  ANALYSIS

The employer contends that the commission erred in determining that 1) Presgraves sustained an injury by accident arising out of his employment; 2) the medical evidence supported the periods of disability alleged; 3) the alleged disability and medical treatment are/were related to the alleged accident; 4) Presgraves sustained an injury to his lumbar spine or low back as a result of the alleged accident; 5) Presgraves sustained an injury to his cervical spine or upper back as a result of the alleged accident; and 6) Presgraves is entitled to an award for benefits for the period commencing April 23, 2008, and continuing.

A.  Injury by Accident

The employer contends that the commission erred in finding Presgraves sustained an injury by accident arising out of his employment.  Specifically, the employer argues that the evidence only showed a cumulatively sustained trauma and the "discrete incident" cases are inapplicable.

"In order to recover benefits for an injury under the Workers' Compensation Act, the employee must have suffered an 'injury by accident arising out of and in the course of the employment.'"  Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 167, 543 S.E.2d 619, 621 (2001) (quoting Code § 65.2-101).  "'A finding by the commission that an injury arose out of and in the course of employment is a mixed finding of law and fact . . . .'"  R & R Constr. Corp. v. Hill, 25 Va. App. 376, 378-79, 488 S.E.2d 663, 664 (1997) (quoting Dublin Garment Co. v. Jones, 2 Va. App. 165, 167, 342 S.E.2d 638, 638 (1986)).  "Factual findings of the commission will not be disturbed on appeal unless plainly wrong or without credible evidence to support them."  Georgia Pac. Corp. v. Dancy, 17 Va. App. 128, 135, 435 S.E.2d 898, 902 (1993) (citing Armstrong Furniture v. Elder, 4 Va. App. 238, 247, 356 S.E.2d 614, 619 (1987)).

> However, whether those facts prove the claimant suffered an
> "injury by accident" is a question of law.  See Tomko v. Michael's

> Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970). The comission's finding on the legal question is not conclusive and binding upon us, but is properly subject to judicial review. See Hill, 25 Va. App. at 378-79, 488 S.E.2d at 664.

Goodyear Tire, 35 Va. App. at 168, 543 S.E.2d at 621.

An "injury by accident" is defined as an "identifiable incident or sudden precipitating event [that results] in an obvious sudden mechanical or structural change in the body." Morris v. Morris, 238 Va. 578, 589, 385 S.E.2d 858, 865 (1989) (citation omitted); see Chesterfield Co. v. Dunn, 9 Va. App. 475, 476, 389 S.E.2d 180, 181 (1990). Thus, in order to establish an "injury by accident," the claimant must prove "'(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change.'" Ogden Aviation Services v. Saghy, 32 Va. App. 89, 94, 526 S.E.2d 756, 758 (2000) (quoting Dunn, 9 Va. App at 475, 389 S.E.2d at 181).

Specifically,

> [a]n injury by accident requires an "identifiable incident, or a sudden precipitating event . . . bounded with rigid temporal precision [resulting in a] sudden mechanical or structural change in the body." Morris v. Morris, 238 Va. 578, 589, 385 S.E.2d 858, 865 (1989). An injury need not occur within a specific number of seconds or minutes to be "bounded with rigid temporal precision," but instead, must occur within a "reasonably definite time." Id. at 589, 385 S.E.2d at 864.

Richard E. Brown, Inc. v. Caporaletti, 12 Va. App. 242, 243-44, 402 S.E.2d 709, 710 (1991) (alteration in original). "'Sudden' as used in this context means an 'immediate' event that causes or precipitates an injury; 'sudden' is not used here to connote an *unexpected* consequence. Thus, 'sudden precipitating' event is one that 'immediately' causes an injury, as distinguished from an injury that appears or occurs gradually." Hill, 25 Va. App. at 379, 488 S.E.2d at 664 (emphasis in original) (citations omitted).

In contrast, an

> "injury of gradual growth, . . . not the result of some particular piece of work done or condition encountered on a definite occasion, but caused by the cumulative effect of many acts done or many exposures to conditions prevalent in the work, no one of which can be identified as the cause of the harm, is definitely excluded from compensation."

Southern Express v. Green, 257 Va. 181, 187, 509 S.E.2d 836, 839 (1999) (quoting Francis H. Bohlen, A Problem in the Drafting of Workmen's Compensation Acts, 25 Harv. L. Rev. 328, 342-43 (1912)).  Thus, "'injuries resulting from repetitive trauma, continuing mental or physical stress, or other cumulative events, as well as injuries sustained at an unknown time, are not injuries by accident.'"  Id. at 186, 509 S.E.2d at 839 (quoting Morris, 238 Va. at 589, 385 S.E.2d at 865); see also Hoffman v. Carter, 50 Va. App. 199, 212-13, 648 S.E.2d 318, 326 (2007) ("'[A] gradually incurred injury is not an injury by accident within the meaning of the Act.'" (quoting Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 175, 468 S.E.2d 152, 154 (1996))); Kraft Dairy Grp., Inc. v. Bernardini, 229 Va. 253, 256, 329 S.E.2d 46, 48 (1985) ("Under the well-settled law in Virginia, an injury resulting from the cumulative trauma caused by the physical exertions inherent in an employee's normal work is not an 'injury by accident,' compensable under the Workers' Compensation Act.").

Relying on Bernardini, the employer asserts that the injury in this case was a cumulatively sustained trauma and as such is not compensable.  229 Va. 253, 329 S.E.2d 46.  In Bernardini, the Supreme Court of Virginia held that Ms. Bernardini ("Bernardini") was "injured by the cumulative trauma caused by the physical exertions inherent in her normal work."  Id. at 256, 329 S.E.2d at 48.  Bernardini worked in a plant that manufactured ice cream, removing cellophane-wrapped bundles of four half-gallon containers of ice cream from a production line and stacking them on a wooden pallet, and had performed the duties in question for several months without sustaining any injuries.  Id. at 254, 256, 329 S.E.2d at 46-47, 48.  When she was

- 4 -

injured, she was doing the normal, repetitive work that her position required, and both her physicians concluded that the injury was caused by the repetitive heavy lifting that she did at work. Id. at 256, 329 S.E.2d at 48. In addition, Ms. Bernardini could not point to an accident, identifiable incident, or a sudden precipitating event on the day she reported her injury to which she could attribute the pain. Id.

The employer also relies on the Supreme Court's holding in Morris in which it addressed three separate claimants' injuries, noted that the commission and this Court were improperly extending the Act's coverage to include gradually incurred injuries, and reiterated the parameters of an "injury by accident." 238 Va. 578, 38 S.E.2d 858. In Morris, two of the workers sustained myocardial infarctions and the third sustained a ruptured cervical disc. The first worker who sustained myocardial infarctions had been lifting cartons of fiberglass weighing about fifty pounds from a loading dock onto the bed of his truck for approximately forty-five minutes, experienced pain after he drove away from the dock, and went to the doctor about an hour later. Id. at 581-82, 385 S.E.2d at 860. The second worker with myocardial infarctions was installing ceiling panels, which weighed approximately thirty to thirty-five pounds, for approximately two and a half hours when he started experiencing pain during a break and was taken to the hospital. Id. at 583, 385 S.E.2d at 861. The worker with the ruptured cervical disc was unloading seven steel doors from a truck over approximately an hour and a half, and began feeling pain about noon but did not go to a doctor until a few weeks later. Id. at 582, 385 S.E.2d at 860-61. The Supreme Court concluded that the three were not injuries by accident because the claimants did not carry their burden of proving that the cause of their injuries was "'*an identifiable incident or sudden precipitating event* and that it resulted in an *obvious sudden mechanical or structural change in the body*.'" Id. at 589, 385 S.E.2d at 864-65 (quoting Lane Co. v. Saunders, 229 Va. 196, 199, 326 S.E.2d 702, 703-04 (1985)).

In this case, the evidence shows that the event, which precipitated Presgraves's injuries, was the cranking of a handle for ten to thirty minutes, which is not an activity that was normal, repetitive work required by his position.[2]  The evidence further shows that the cervical spine and lumbar spine injuries were not an "'injury of gradual growth . . . caused by the cumulative effect of *many acts done or many exposures* to conditions prevalent in the work, no one of which can be identified as the cause of the harm . . . ,'" but was "'the result of some particular piece of work done or condition encountered on a definite occasion.'"  Southern Express, 257 Va. at 189, 509 S.E.2d at 841 (emphasis in original) (quoting Aistrop v. Blue Diamond Coal Co., 181 Va. 287, 293, 24 S.E.2d 546, 548 (1943)).  Presgraves's injuries were not caused by gradual growth or repetitive acts, but resulted from the single event of cranking the handle on a definite occasion during the performance of the specific piece of work such that it was an identifiable incident. The causative event occurred within the course of ten to thirty minutes, which the commission properly determined was a reasonably definite time period.

Further, the record contains sufficient evidence from which the commission could find that Presgraves suffered a sudden structural or mechanical change in his body, specifically, neck and lower spine injuries.  The medical evidence established that the injury itself, cervical spine and lumbar spine injury, was a sudden structural or mechanical change in his body.  While Presgraves had prior neck and low back conditions that required treatment and surgery, he had not experienced this type of pain since he started working with the employer, nor had he taken time off from work.  In addition, Dr. Bruno, Dr. Citrin, and Dr. Kelley opined that the cervical and lumbar spine injuries were a result of the accident.  Thus, the record demonstrates that the injuries he sustained were solely attributable to the work activity he performed on August 29,

---

[2] The "handle" refers to a crank handle that is attached to a mechanism designed to raise or lower "landing gear" designed to stabilize large trailers when not attached to a truck and has to be cranked by hand to raise or lower it.

- 6 -

2007, such that he suffered a sudden structural or mechanical change in his body. Even though Dr. Wattenmaker provided an opinion to the contrary, the conflicting medical evidence is not sufficient to support a reversal of the commission's decision. Goodyear Tire, 35 Va. App. at 171, 543 S.E.2d at 623 (citing Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 268 (2000)).

There is credible evidence supporting the commission's factual findings, and those facts prove that Presgraves "described an injury at a particular time, place and occasion which caused structural change to his body, i.e. his cervical and lumbar spines." Thus, we find that Presgraves sustained an "injury by accident," and affirm the commission's determination that Presgraves suffered an injury by accident that arose out of and in the course of his employment.

### B. Causation

"Factual findings of the commission will not be disturbed on appeal unless plainly wrong or without credible evidence to support them." Dancy, 17 Va. App. at 135, 435 S.E.2d at 902 (citing Armstrong Furniture, 4 Va. App. at 247, 356 S.E.2d at 619). Well-settled principles establish that the

> "question [of causation] raised by 'conflicting expert medical opinions' is one of fact." Eccon Constr. Co. v. Lucas, 221 Va. 786, 790, 273 S.E.2d 797, 799 (1981). Thus, the commission's "finding upon conflicting medical evidence that a certain condition does or does not exist is . . . a conclusive finding of fact." McPeek v. P.W.& W. Coal Co., 210 Va. 185, 188, 169 S.E.2d 443, 445 (1969). "The deference that we give to the commission's fact finding on medical questions is based upon the 'unwisdom of an attempt by . . . [courts] uninitiated into the mysteries [of the medical science debate] to choose between conflicting expert medical opinions.'" Stancill v. Ford Motor Co., 15 Va. App. 54, 58, 421 S.E.2d 872, 874 (1992) (citation omitted).

Robinson, 32 Va. App. at 5, 526 S.E.2d at 268-69. Where there is conflicting medical evidence, this Court has established the following:

The general rule is that when an attending physician is positive in his diagnosis of a disease, great weight will be given by the courts to his opinion. However, when it appears . . . that the diagnosis is shaded by doubt, and there is medical expert opinion contrary to the opinion of the attending physician, then the trier of the fact is left free to adopt that view which is most consistent with reason and justice.

Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439, 339 S.E.2d 570, 572 (1986) (citations omitted).

"Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991). "Whenever a physician's diagnosis flows from an assumption that rests upon a faulty premise, such as misinformation provided by a claimant, the commission may refuse, and often will be required to refuse, to attribute any weight to that opinion." Sneed v. Morengo, Inc., 19 Va. App. 199, 205, 450 S.E.2d 167, 171 (1994).

### 1. Cervical Spine Injuries

The employer contends that the commission erred in affirming the finding that Presgraves sustained an injury to his cervical spine or upper back as a result of the accident based on Dr. Wattenmaker's diagnoses and the fact he was suffering a recurrence of symptoms he was already experiencing prior to August 29, 2007.

There is credible evidence in the record to support the commission's finding that the cervical spine injury was causally related to the August 29, 2007 accident. Presgraves reported that he felt pain in his chest, arm, and neck shortly after he finished cranking the landing gear on the truck. On August 29, 2007, Dr. Oswald noted the 2005 neck fusion surgery, and diagnosed Presgraves with acute cervical strain-severe, and cervical radiculopathy "affecting left arm predominantly." Dr. Bruno reviewed the medical records, which included the 2005 neck fusion surgery and prior treatments for lower back pain, and opined that "[t]he medical records that I

- 8 -

have reviewed lead me to the conclusion within a reasonable degree of medical certainty that his compensable accident of August 29, 2007 resulted in cervical and lumbar strain and necessitated those treatments that he received thereafter." Dr. Citrin also reviewed Presgraves's diagnostic studies, noted cervical and lumbar spine pain, and concluded, "it is within the reasonable medical probability that the disc herniation identified at the L3-L4 level on the left side developed secondary to the work related injury of August 29, 2007." In addition, Dr. Kelley replied yes to the question "Is it your opinion within a reasonable degree of medical probability that the complaints for which you have treated Jackie Presgraves since September 2007 have been caused at least in substantial part by the incident in which he was involved at work on or about August 29, 2007?"

Although Dr. Wattenmaker contends that there is great similarity between the July 2007 incident and the accident on August 29, 2007, the commission gave little weight to this testimony in light of the other treating physicians' testimony. The commission did not err in giving more weight to the other doctors' opinions, and we will not substitute our judgment for that of the trier of fact. Therefore, the commission's finding that Presgraves cervical spine injury is related to the August 29, 2007 injury is supported by credible evidence and is not plainly wrong. Thus, we are bound by it.

## 2. Lumbar Spine Injury

The employer also contends that the commission erred in affirming the finding that Presgraves sustained an injury to his lumbar spine or low back as a result of the accident.

The evidence attributing the lumbar spine injury to the incident on August 29, 2007, is credible and sufficient to support the commission's finding that it was caused by the August 29, 2007 incident. On August 30, 2007, Presgraves stated that he began feeling low back pain that evening, and had not experienced an intervening accident or trauma since the event on the prior

day. As noted above, Dr. Kelley and Dr. Bruno both opined that the lower back injury was a result of the accident on August 29, 2007. Dr. Citrin also concluded, "the disc herniation identified at the L3-L4 level on the left side developed secondary to the work related injury of August 29, 2007." In addition, Dr. Chadduck replied affirmatively to Presgraves's counsel's question "Is it your opinion within a reasonable degree of medical probability that Jackie Presgraves has since April 23, 2008 [sic] disabled from his pre-injury employment as a manual laborer as a result of the lumbar spine problems for which you have treated him since that date?"

Again, although Dr. Wattenmaker opined that he found "no objective evidence of an injury that occurred on August 29, 2007 that would explain [Presgraves's] low back pain and right lower extremity pain," the commission gave this testimony little weight and concluded that the lumbar spine injury was causally related. Because we find that the commission's finding that the lumbar spine injury is causally related to the August 29, 2007 accident is based on credible evidence and is not plainly wrong, its finding is binding.

### C. Disability and Medical Treatment Related to the Accident

The employer contends that the commission erred in finding that Presgraves was disabled as a result of the accident and that the medical treatment was related to the accident. "Factual findings of the commission will not be disturbed on appeal unless plainly wrong or without credible evidence to support them." Dancy, 17 Va. App. at 135, 435 S.E.2d at 902 (citing Armstrong Furniture, 4 Va. App. at 247, 356 S.E.2d at 619).

The medical evidence, as noted above, supports the finding that the cervical spine and lumbar spine injuries were causally related to the accident on August 29, 2007. The medical evidence further supports the commission's finding that Presgraves was disabled from work as a result of these injuries and that the subsequent medical treatment were related to the accident. After the August 29, 2007 injury, Presgraves was released to light-duty work until April 23,

2008, when he was then taken off of work completely. Dr. Chadduck responded in the affirmative to Presgraves's counsel's question, "Is it your opinion within a reasonable degree of medical probability that Jackie Presgraves has since April 23, 2008 [sic] disabled from his pre-injury employment as a manual laborer as a result of the lumbar spine problems for which you have treated him since that date?" With regard to the medical treatments, Dr. Bruno specifically concluded after reviewing all of the medical records "within a reasonable degree of medical certainty [Presgraves's] compensable accident of August 29, 2007 resulted in cervical and lumbar strain and necessitated those treatments that he received thereafter."

The commission's finding that the disability and medical treatments were related to the accident is supported by credible evidence, and is not plainly wrong. Thus, this Court bound by it on appeal.

### D. Period of Disability

The employer argues that the commission erred in finding the medical evidence supported the period of disability beginning April 23, 2008, and continuing. Specifically, the employer contends that Presgraves was not totally disabled beginning April 23, 2008, because Dr. Chadduck stated in a letter to Dr. Feit that "I also wrote a work excuse for him to either go to a light duty situation or to be off of work depending on his job description until the completion of these tests," and therefore he was only partially disabled. Further, he contends the actual note merely stated he was only disabled from his "pre-injury work."

The medical evidence in the record shows that after the accident on August 29, 2007, Presgraves was disabled because of his cervical spine and lumbar spine injuries, and was initially released to modified work and then taken off of work completely on April 23, 2008. Dr. Oswald released Presgraves to modified work as a result of his injuries on August 29, 2007, on September 5, 2007, and October 9, 2007. Dr. Kelley conducted follow-up visits with Presgraves,

and released him to modified work on December 11, 2007. On January 25, 2008, Dr. Feit evaluated Presgraves and released him to sedentary work with no lifting.

Then, on April 23, 2008, Dr. Chadduck wrote a letter to Dr. Feit in which he stated "I also wrote a work excuse for him to either go to a light duty situation or to be off of work depending on his job description until the completion of these tests." However, the work excuse stated, "Pt has diskogenic pain and is undergoing further diagnostic testing and treatment. He needs to remain off work until completed estimate 3-6 months." Then on February 2, 2009, Dr. Chadduck replied in the affirmative when asked "Is it your opinion within a reasonable degree of medical probability that Jackie Presgraves has since April 23, 2008 [sic] disabled from his pre-injury employment as a manual laborer as a result of the lumbar spine problems for which you have treated him since that date?"

The medical evidence establishes that Presgraves was totally disabled from April 23, 2008, continuing. Thus, the commission's finding that Presgraves was totally disabled beginning April 23, 2008, is supported by credible evidence and not plainly wrong, and is binding on this Court.

### E. Award of Benefits April 23, 2008 and Continuing

Lastly, the employer contends that the commission erred in awarding temporary total disability benefits. Specifically, the employer argues that because Presgraves did not establish total disability, he was required to prove that he made a reasonable effort to procure suitable work, but he failed to adequately market his residual work capacity. See Washington Metro. Area Transit Auth. v. Harrison, 228 Va. 598, 601, 324 S.E.2d 654, 656 (1985) (noting that in order for a partially incapacitated employee to obtain temporary total disability benefits he must prove he made a reasonable effort to procure suitable work, but was unable to market his residual work capacity). Because we hold that the commission's finding of total disability beginning

April 23, 2008, and continuing is supported by credible evidence, Presgraves was not required to market his residual work capacity, and thus the commission did not err in awarding temporary total disability benefits beginning April 23, 2008, and continuing.

## II. CONCLUSION

The evidence, viewed in the light most favorable to Presgraves, proved that Presgraves suffered an "injury by accident" on August 29, 2007. In addition, credible evidence supports the commission's findings that the cervical spine and lumbar spine injuries were caused by the accident, that the disability and medical treatments are and were related to the accident, and that the medical evidence supported the periods of disability. Further, credible evidence supports the commission's finding that Presgraves was totally disabled beginning April 23, 2008, and continuing. Accordingly, we affirm.

<u>Affirmed.</u>