COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Russell and AtLee
Argued at Richmond, Virginia


GENE FORBES ENTERPRISES
 d/b/a McDONALD'S OF TAZEWELL
 AND ARCH INSURANCE COMPANY
                                                        MEMORANDUM OPINION* BY
v.        Record No. 2320-14-2                        JUDGE WESLEY G. RUSSELL, JR.
                                                               JUNE 9, 2015
JANIS R. COOPER


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Steven T. Billy (Billy & Seli, P.C., on briefs), for appellants.

            Mark T. Hurt (The Law Offices of Mark T. Hurt, on brief), for
            appellee.


        Appellants, Gene Forbes Enterprises d/b/a McDonald's of Tazewell and Arch Insurance

Company (employer), appeal the decision of the Workers' Compensation Commission awarding

benefits to appellee.  On appeal, employer presents the following eleven assignments of error:

            1.  The [commission] erred, as a matter of law, in affirming the
                [d]eputy [c]ommissioner's decision excluding and refusing to
                consider the January 19, 2014 questionnaire responses of
                Dr. James Vascik.

            2.  The [commission] erred, as a matter of law, in affirming the
                [d]eputy [c]ommissioner's decision to admit [claimant's]
                exhibits #3-5 into the evidence.

            3.  The [commission] erred, as a matter of law and fact, in finding
                that [claimant] suffered a compensable injury by accident that
                arose out of her employment on September 3, 2013.

            4.  The [commission] erred, as a matter of law and fact, in finding
                that [claimant] suffered a compensable injury by accident that

────────────────────
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

occurred in the course of her employment on September 3, 2013.

5. The [commission] erred, as a matter of law and fact, in finding that [claimant] suffered a sudden mechanical or structural change to her neck on September 3, 2013.

6. The [commission] erred, as a matter of law and fact, in finding that [claimant's] medical treatment and alleged disability were causally related to the alleged accident of September 3, 2014.

7. The [commission] erred, as a matter of law, in awarding [claimant] lifetime medical benefits for body parts for which no claim had been filed.

8. The [commission] erred, as a matter of law and fact, in awarding [claimant] disability benefits for periods when she did not have a legally sufficient statement of total disability and in awarding [claimant] ongoing disability.

9. The [commission] erred, as a matter of law, in failing to make a ruling on [employer's] asserted defense that [claimant] failed to market her residual work capacity.

10. The [commission] erred, as a matter of law, in failing to correct the employer's name in the proceedings from McDonald's of Tazewell d/b/a Gene Forbes Enterprises to its proper legal name, Gene Forbes Enterprises d/b/a McDonald's of Tazewell.[1]

11. The [employer] challenge[s] the legal conclusions of the [commission] and the sufficiency of the evidence to support the [c]ommission's decision in this case.[2]

For the reasons stated below, we affirm the decision of the commission.

---

[1] The commission never made a formal ruling on this issue; however, claimant, as she did before the deputy commissioner, stated at oral argument that she had no objection to correcting the apparent misnomer. Accordingly, in the style of the case, the employer will be referred to as "Gene Forbes Enterprises d/b/a McDonald's of Tazewell."

[2] Employer presents no argument for this assignment of error, and therefore, we will not address it. Rule 5A:20(e). We note, however, that employer's challenge to the commission's legal conclusions and the sufficiency of the evidence is addressed, at length, throughout the remaining assignments of error.

BACKGROUND

On appeals from the commission, "we review the evidence in the light most favorable to the prevailing party[,]" here, claimant. R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). Moreover, "[f]actual findings of the commission will not be disturbed on appeal unless plainly wrong or without credible evidence to support them." Ga. Pac. Corp. v. Dancy, 17 Va. App. 128, 135, 435 S.E.2d 898, 902 (1993) (citation omitted).

So viewed, the record establishes that claimant is a former employee of Gene Forbes Enterprises, a business that operated several McDonald's restaurants, including one in both Bluefield and Tazewell, Virginia. Claimant, a forty-three-year-old female, worked for the company at various store locations for 23 years. In 2008, she was serving as store manager at the Bluefield, Virginia store. In June 2013, the business decided to close the Bluefield location for renovations, and claimant was transferred to Tazewell, where she remained a manager, but was subject to the direction of that location's store manager. Claimant admits she was displeased by her reassignment. Her duties in these positions, which usually entailed nine-hour shifts, included serving customers, frequent cleaning of all parts of the store, regular loading and unloading of supply trucks, and lifting of equipment and product weighing up to 40 pounds.

On October 8, 2013, claimant filed with the Virginia Workers' Compensation Commission a claim for benefits for a neck injury she claimed to have sustained while working at the Tazewell McDonald's drive-thru window on September 3, 2013.[3] According to claimant, on the date of her injury, she was manning the drive-thru by herself when, in fulfilling an order, a bag of french fries slipped from her hands. When she impulsively bent over quickly to catch the bag, claimant "heard and felt a tear" down her neck and shoulder and felt a shooting pain that

_____

[3] Claimant also filed a claim for a back injury, but that claim was withdrawn and is not a part of this appeal.

caused her to cry. She reported the injury to her supervisor the same day and informed her that the pain would not allow her to work late. Claimant acknowledges that she had issues with neck and back problems before this incident, however she had no history of absences from work based on those issues and stated that the previous pain was different in that it was more sporadic and felt more like a tingling or numbing sensation rather than pain.

Hoping that the injury was minor and that the pain would be temporary, claimant did not immediately seek medical treatment. Not having recovered after two days, however, she sought treatment from a family nurse practitioner, Ms. Walker, on September 5, 2013. The nurse practitioner's records note that claimant was working when she "felt a pop in her posterior left neck followed by a burning like pain [in] the muscle with no radiation" and that "[s]ince [the incident claimant] has continued her activities and work to the point that both the upper back and neck pain have become worse and unbearable causing her not to be able to walk, bend, stand, breathe, lift, sleep, work or perform ADL's normally." Nurse Practitioner Walker instructed claimant to refrain from work until her follow-up appointment on September 9, 2013.

After claimant's follow-up appointment, claimant still experienced pain on the left side of her upper trapezius and also in the left scapula trapezius area.[4] During a subsequent visit, she cried because of the pain and the inability to continue providing for her family. Based on claimant's irregular gait, bent-over posture, and continued negative results on the straight leg raise exam, Nurse Practitioner Walker referred claimant for a cervical MRI, which was conducted on September 20, 2013. Based on the MRI results, claimant was then referred to a

---

[4] The trapezius is "[a] flat, triangular muscle covering the posterior surface of the neck and shoulder. It raises, retracts or lowers the scapula, extends the head, and is controlled by the accessory nerves." Taber's Cyclopedic Medical Dictionary 2370 (22d ed. 2013).

neurosurgeon, Dr. James M. Vascik. Claimant also was referred to physical therapy, and she was advised to remain out of work.

Dr. Vascik examined claimant on October 1, 2013. Notes from that visit reveal that claimant came to the office "bent over at the waist with her head cocked over to the right." According to Dr. Vascik's analysis of the recent MRIs, claimant had bulging disks from C3-C7, but those disks were not touching her spinal cord or the nerve roots. Dr. Vascik concluded, "I do not see a surgical problem on any of her studies. I don't see that an ESI would be of value as I believe her problem is musculoskeletal in nature, not from a nerve root compression problem."

The following day, claimant returned to Nurse Practitioner Walker, where she complained of continuing and exasperated pain due to the car ride to the neurosurgeon and the physical therapy. Claimant was then referred to an orthopaedic physician and, a short time thereafter, another neurosurgeon. When claimant attempted to make an appointment with the orthopaedist, she was informed that he did not treat neck and back injuries, and she did not see the neurosurgeon, despite arriving for her appointment, because she could not afford the co-pay.

Claimant also started seeing a pain specialist, Dr. Marc Swanson, whose office claimant first visited on October 30, 2013. Claimant's continued pain, which she described as tightness in her left neck and shoulder muscles, caused her to continue visiting Dr. Swanson, despite not being able to afford much treatment. She visited Dr. Swanson on a monthly basis and received several brachial plexis block injections to alleviate her muscle spasms. This treatment afforded her temporary pain relief of three to five days. Dr. Swanson found that although claimant may have had a pre-existing injury, the September 3, 2013 incident "escalated her pain and added to the functional impairment over and above and beyond what she experienced up until the injury, to the point of injury[,]" and he linked her present condition to the event to a reasonable degree of medical certainty.

- 5 -

In January 2014, Dr. Swanson noted that claimant could not safely or reliably return to work and advised that she remain out of work until the end of February. Dr. Swanson commented that, while claimant was demonstrating some improvement, she would not be employable "when she struggles with neck and arm pain, radicular symptoms, symptoms that really limit her ability to function during the day." Claimant testified that she could no longer engage in hobbies such as hunting and fishing and could not perform routine tasks, such as house and yard work, grocery shopping, or extended driving without straining her injury. Dr. Swanson ultimately concluded that claimant "is not currently able to return to work."

After claimant filed her claim for benefits, a hearing was scheduled before the deputy commissioner for January 21, 2014. After granting two continuances based on claimant's motions, the matter was reset for May 13, 2014. Claimant filed her designation of medical records on May 9, 2014. Employer filed its designation of medical records on the evening of May 12, 2014, the day before the rescheduled hearing. The designation included questionnaire responses that employer previously had received from Dr. Vascik on or about January 19, 2014. Arguing that employer's designation failed to comply with Rule 4.2, claimant moved to strike the questionnaire responses. In response, employer filed a motion to continue and an objection to the motion to strike. The deputy commissioner denied employer's motions and excluded the questionnaire. After the evidentiary hearing, employer unsuccessfully twice sought reconsideration of this issue.

During the proceeding on the merits of the case, claimant offered as an exhibit three text messages of the claimant discussing her injuries with others. Employer objected to their consideration on hearsay grounds, but the deputy commissioner accepted them, noting, "I will allow them for whatever worth, evidentiary weight I think they deserve." During the hearing, the deputy commissioner realized that the claim had been filed with an incorrect name of the

employer, and counsel agreed to amend the claim to reflect the proper party. The deputy commissioner also noted a potential further discrepancy in claimant's claim: in her pre-hearing statement she had asserted both a neck and left shoulder injury, but her formal claim included only the neck injury. Claimant sought to amend her claim, but the deputy commissioner denied her request, and the claimant proceeded on her neck claim only. After the evidentiary hearing, the record was held open to receive a *de bene esse* deposition of Dr. Swanson, who failed to appear at the hearing despite having been served a subpoena.

On June 19, 2014, the deputy commissioner issued an opinion finding that claimant had suffered a compensable injury of her neck. Specifically, the deputy commissioner determined that claimant sustained an injury by accident to her neck on September 3, 2013, arising out of and in the course of her employment. The deputy commissioner found the employer responsible for the cost of her treatment with Nurse Practitioner Walker, Dr. Vascik, and the other neurosurgeon. The treatment by Dr. Swanson was deemed reasonable but unauthorized. The deputy commissioner then awarded claimant compensation of $635.64 per week temporary total disability for the periods of September 3, 2013 through November 15, 2013 and January 23, 2014 until otherwise modified. Employer timely filed a request for review of the deputy commissioner's opinion by the full commission, raising twenty assignments of error. The full commission issued an opinion on November 24, 2014, affirming the ruling of the deputy commissioner. This appeal followed.

ANALYSIS

At the outset, we note that the decisions of the commission are "presumed to be correct . . . [and that if] this [C]ourt determines that the evidence is sufficient to support the finding of the . . . [c]ommission, the order of the [c]ommission will be affirmed." Humphries v. Newport News Shipbuilding & Dry Dock Co., 183 Va. 466, 476, 32 S.E.2d 689, 694 (1945).

Having disposed of employer's tenth and eleventh assignments of error above, we turn to the remaining nine assignments of error.[5]

### Exclusion of Dr. Vascik's Questionnaire Responses

Employer contends that the exclusion of Dr. Vascik's questionnaire constituted an abuse of discretion because, under Code § 65.2-902 and Rule 4.2 of the Rules of the Commission, such a document constitutes a "required report" and because Rule 2.2(B)(4) provides that designated records "will be admitted into evidence." Employer further argues that these documents "are automatically part of the hearing record," and therefore the deputy commissioner was not free to exclude the questionnaire and the commission should have considered it. Because this argument amounts to a challenge to the commission's interpretation of its own rules, we review the commission's action deferentially and will only reverse the commission if its action is arbitrary and capricious. Jenkins v. Webb, 52 Va. App. 206, 211, 662 S.E.2d 633, 635 (2008) (citation omitted).

Although employer's recitation of these provisions may be correct, the cited Rules cannot be read in isolation. Rather, they must be read in context and in relation to the other Rules. Commission Rule 1.12 expressly authorizes the commission "to enforce its rules and the provisions of the Workers' Compensation Act . . . upon its own motion . . . [by excluding] evidence from the record . . . ." This power is "[i]n addition to the statutory authority of the [c]ommission to levy fines, to assess attorney fees and punish contempt . . . ." Accordingly,

---

[5] Many of employer's assignments of error share a common theme – that employer introduced substantial evidence that contradicted claimant's version of events and her ultimate position in the case. Much of employer's brief catalogues inconsistent and contradictory statements allegedly made by claimant and expert opinions that conflict with the opinions of the health care providers relied upon by claimant. This effort is misguided in that it misapprehends our role. It is the commission, not this Court, that makes factual and credibility determinations. Even if we were to find employer's list of inconsistencies persuasive, we nevertheless must affirm the commission's factual conclusions if there is evidence in the record to support them.

although Rule 4.2 provides that the civil penalty established by Code § 65.2-902 applies to medical records, such penalty is not the sole means by which the commission can enforce Rule 4.2's requirement that "[e]ach party shall promptly provide the other parties with copies of any medical records they receive as they receive them." Further, nothing in Rule 1.12 limits the commission's power to exclude evidence after it has become part of the record. We, therefore, conclude that the commission's discretion to exclude evidence under Rule 1.2 is not curtailed by Rule 4.2 or Rule 2.2(B)(4).

Here, employer sent Dr. Vascik a questionnaire on January 15, 2014. Prior to sending it, employer noted that, in reserving "the right to obtain questionnaire responses from the claimant's treating physicians," it "will provide copies of any such reports as soon as they are received," as required by Rule 4.2. Dr. Vascik completed, signed, and returned the questionnaire to employer on January 19, 2014, but employer did not disclose the questionnaire until 7:18 p.m. on May 12, 2014, the eve of the scheduled hearing, and almost four months after receiving the document from the physician. The deputy commissioner found that this delay violated Rule 4.2's requirement to "promptly provide" copies of medical records as they are received. The commission adopted the deputy commissioner's resolution of the issue.

As we previously have stated, "Rule 1.12 sets forth methods by which the commission may enforce the Act and its rules, expressly allowing the commission in the exercise of its discretion to act *sua sponte* to exclude evidence from the record." Jenkins, 52 Va. App. at 211, 662 S.E.2d at 635. Accordingly, because the commission determined there had been a violation of its rules, and because generally, "[t]he commission, in order to do full and complete justice in each case, must be able to protect itself and parties from discovery abuse[,]" Jeff Coal, Inc. v.

<u>Phillips</u>, 16 Va. App. 271, 278, 430 S.E.2d 712, 717 (1993), we find the commission did not abuse its discretion in excluding the questionnaire responses of Dr. Vascik.[6]

Admission into Evidence of Claimant's Exhibits 3-5

Claimant's exhibits 3-5 were reproductions of text messages that claimant either sent or received after the injury. Claimant sought to introduce the reproductions in her rebuttal case to demonstrate prior consistent statements in an effort to counter testimony adduced in employer's case that suggested she had made statements inconsistent with her hearing testimony.

Employer correctly notes that the commission properly may receive hearsay evidence in determining the substantial rights of the parties. <u>See</u> Rule 2.2, Rules of the Virginia Workers' Compensation Commission. This Court has repeated that rule, explaining that "the commission is not bound by common law rules of evidence, but may adopt whatever procedures it sees fit so long as they 'protect the substantial rights of the parties.'" <u>Ceres Marine Terminals v. Armstrong</u>, 59 Va. App. 694, 702, 722 S.E.2d 301, 305 (2012) (quoting <u>Rios v. Ryan, Inc. Cent.</u>, 35 Va. App. 40, 44-45, 542 S.E.2d 790, 791-92 (2001)).

---

[6] In making its argument, employer also compares the deputy commissioner's exclusion of the questionnaire to his leaving the record open to allow for the deposition of Dr. Swanson, who failed to appear at the hearing. Unlike the late filing of the questionnaire, however, the nonappearance of Dr. Swanson was not a failure attributable to a party. Employer further asserts that the deputy commissioner acted arbitrarily when he chose to admit Dr. Swanson's April 24, 2014 letter opinion that was not filed by claimant until four days prior to the hearing. This contention is meritless, because employer failed to contemporaneously object to the admission of Dr. Swanson's report and, moreover, the deputy commissioner clearly had the discretion to treat a document that was filed several days before the hearing and no more than two weeks after its creation differently from a record that had been in employer's possession for over three months yet filed only on the eve of the hearing. Employer's reliance on <u>Mason v. Danis Enter.</u>, No. 2370-93-4, 1995 Va. App. LEXIS 358 (Va. Ct. App. Apr. 11, 1995), is misplaced. It is unpersuasive here because it is easily distinguishable in that, unlike the extent of the sanction imposed in <u>Mason</u>, the deputy commissioner here excluded only one document. As evidenced by the ten other assignments of error and the evidence adduced below, employer retained and exercised the ability to put on a substantial defense without the responses to the questionnaire.

Employer asserts that the commission abused its discretion in admitting the hearsay in this case because (1) the claimant failed to lay a proper foundation; (2) the text messages were not "reliable" hearsay; (3) the reproduced images violated the best evidence rule; and (4) allowing the admission of the text messages failed to protect the substantial rights of the employer. Employer reasons that these errors occurred because claimant submitted "hand-picked" messages that were taken out of context. Employer cites no authority, and we are not aware of any, that restricts the admissibility of hearsay under these circumstances.

"Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented.' Unsupported assertions of error 'do not merit appellate consideration.'" Jones v. Commonwealth, 51 Va. App. 730, 734, 660 S.E.2d 343, 345 (2008) (quoting Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992)). "The Supreme Court concluded that 'when a party's "failure to strictly adhere to the requirements of Rule 5A:20(e)" is significant, "the Court of Appeals may . . . treat a question presented [now assignment of error] as waived."'" Atkins v. Commonwealth, 57 Va. App. 2, 20, 698 S.E.2d 249, 258 (2010) (quoting Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008)).

When a party believes that the commission erred, it is that party's duty to present that error to this Court with legal authority to support its contention. See Fadness v. Fadness, 52 Va. App. 833, 851, 667 S.E.2d 857, 866 (2008). Because employer provides no supporting legal argument or authority to support its position that claimant's hearsay evidence was received in

error, and because we find that this omission is significant, we conclude that this argument is waived pursuant to Rule 5A:20(e).[7]

Injury Arising out of the Employment

> Whether an injury arises out of . . . employment involves a mixed question of law and fact, which we review *de novo* on appeal. Accordingly, although we are bound by the commission's underlying factual findings if those findings are supported by credible evidence, . . . we review *de novo* the commission's ultimate determination as to whether the injury arose out of the claimant's employment.

Snyder v. City of Richmond Police Dep't, 62 Va. App. 405, 411-12, 748 S.E.2d 650, 653-54 (2013) (internal quotation marks and citations omitted).

Here, the commission credited claimant's version of the incident. Thus, the question before us is whether her description of the accident meets the "arising out of" standard. We find that it does.

Virginia has adopted "the 'actual risk' test" to determine whether an injury arises out of employment. Simms v. Ruby Tuesday, Inc., 281 Va. 114, 122, 704 S.E.2d 359, 363 (2011). "Under the actual risk test, an 'injury comes within the Act only if there is a causal connection between the employee's injury and the conditions under which the employer requires the work to be done.'" Id. (quoting Hilton v. Martin, 275 Va. 176, 180, 654 S.E.2d 572, 574 (2008)). Thus, "[i]n considering the 'arising out of' prong" of Code § 65.2-101, Virginia appellate courts "do

---

[7] Although employer cites neither supporting case authority nor the Virginia Rules of Evidence, it did use the phrase "best evidence rule" on brief. Assuming without deciding that such a reference is sufficient to meet the requirements of Rule 5A:20(e), the best evidence rule did not bar admission of the photographs of the text messages. Although text messages are subject to the best evidence rule, Dalton v. Commonwealth, 64 Va. App. 512, 523, 769 S.E.2d 698, 704 (2015), the photographs/screen shots of the text messages admitted here constitute "duplicate originals." Because they were "duplicate originals," the best evidence rule did not prohibit their admission into evidence. Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 18-4, at 1195 (7th ed. 2012).

- 12 -

not apply the 'positional risk' test, whereby simply sustaining an injury at work is sufficient to establish compensability." Hilton, 275 Va. at 180, 654 S.E.2d at 574. Ultimately, "if the injury can be seen to have followed as a natural incident of the work to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of employment, then it arises out of the employment." Simms, 281 Va. at 122, 704 S.E.2d at 363 (internal quotation marks and citation omitted).

Employer, citing Plumb Rite Plumbing Service v. Barbour, 8 Va. App. 482, 382 S.E.2d 305 (1989), argues that "the simple act of bending over, absent any unusual or awkward movement" does not provide "a sufficient nexus to the employment to meet the 'arising out of' standard." The record, however, reveals more than mere bending.

The evidence establishes that, while working at the drive-thru window, claimant was holding a bag of food in one hand and was in the act of placing a container of french fries in the bag when the bag slipped and began to fall. To prevent the food from falling to the floor, which presumably would have rendered it unfit to provide to customers, claimant reached with the opposite hand across her body to catch the falling bag. Thus, from the record, the commission reasonably could (and did) determine that the injury was caused by not just bending, but by the need to bend, jerk, and twist, and to do so quickly.

The combination of these motions was done to advance employer's business – timely serving the drive-thru customers without throwing away the fallen food and preparing new food. Although, as employer asserts, people routinely bend in their everyday activities, the combination of quickly bending, twisting, and jerking as necessitated by the job-related circumstances is sufficient to remove the actions from a "risk of the neighborhood" to "a natural incident of the work to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of employment . . . ." Simms, 281

- 13 -

Va. at 122, 704 S.E.2d at 363 (internal quotation marks and citation omitted). Accordingly, the record establishes that the injury by accident arose out of claimant's employment.

## Injury Occurring in the Course of Her Employment

Whether an injury occurs in the course of employment is a mixed question of law and fact that we review *de novo*. Snyder, 62 Va. App. at 411, 748 S.E.2d at 653. In reviewing such questions, we are bound by the underlying factual findings of the commission if those findings are supported by credible evidence. Id. Questions of causation are questions of fact. Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989).

An injury by accident occurs in the "course of the employment" when "it happens within the period of employment, at a place where the employee may reasonably be expected to be, and while she is reasonably fulfilling the duties of her employment . . . ." R & T Investments v. Johns, 228 Va. 249, 252, 321 S.E.2d 287, 289 (1984) (citation omitted).

Here, the commission found, based on evidence in the record, that claimant's injury was caused when she quickly moved to catch a bag of french fries. With that underlying fact established, claimant's injury occurred while she was working for the employer at the restaurant's drive-thru window and was injured in the act of bagging food to be provided to employer's customers. From the record, she was where her job required her to be and was performing the normal tasks of the employment. Accordingly, the record establishes that the injury by accident occurred in the course of her employment with employer.

## Sudden Mechanical or Structural Change

Whether a claimant suffered a sudden mechanical or structural change is a question of fact. Accordingly, we must uphold the commission's determination if there is credible evidence in the record to support it. VFP, Inc. v. Shepherd, 39 Va. App. 289, 292, 572 S.E.2d 510, 511

- 14 -

(2002). Additionally, we grant the commission all reasonable inferences that can be drawn from the evidence. Id. at 292, 572 S.E.2d at 512.

Here, there was evidence that the commission found credible to support a conclusion that claimant suffered a sudden mechanical or structural change to her neck when working for the employer on September 3, 2013. Claimant testified that she heard and felt a tearing in her neck when she moved to catch the bag of french fries. We previously have held that a claimant testifying that he heard or felt a tearing or popping is credible evidence that supports a finding of a sudden mechanical or structural change. See, e.g., Corning, Inc. v. Testerman, 25 Va. App. 332, 340, 488 S.E.2d 642, 646 (1997) (finding that claimant's testimony that he "suffered a sudden 'pull' and 'pop' in his back while he was performing work-related duties . . ." provided substantial evidence of an injury by accident even if the claimant had pre-existing conditions that affected the area of claimed injury); National Fruit Prod. Co. v. Winters, No. 0704-97-3, 1997 Va. App. LEXIS 529, at *3 (Va. Ct. App. Aug. 5, 1997) ("[Claimant's] testimony [regarding feeling a pain and a 'popping' in her back] . . . provides credible evidence to support the commission's finding that she proved an identifiable incident resulting in a sudden mechanical change in her body . . . ."); Myerchin v. Heart Corp., No. 0617-97-4, 1997 Va. App. LEXIS 556, at *4 (Va. Ct. App. Aug. 26, 1997) ("Claimant's testimony [regarding experiencing an ache and a pop] . . . provides credible evidence to support the commission's finding that claimant proved an identifiable incident resulting in a sudden mechanical change in his body.").[8]

In addition to hearing and feeling the tearing, claimant testified that she immediately felt pain and that the pain was sufficient to cause her to cry. She reported the incident to her

---

[8] Unpublished opinions of this Court, while having no precedential value, are nevertheless persuasive authority. Otey v. Commonwealth, 61 Va. App. 346, 351 n.3, 735 S.E.2d 255, 258 n.3 (2012).

supervisor and was unable to complete her shift at work. All of these factors support a finding of a sudden mechanical or structural change.

The record also contains medical evidence to support the commission's finding.[9] Doctors Swanson, Ofsa,[10] and Vascik,[11] along with Nurse Practitioner Walker, each provided evidence that claimant suffered a musculoskeletal injury of some degree on September 3, 2013. This conclusion is also supported by the IME report of Dr. Wilson offered by employer. Although clearly of the opinion that no compensable injury occurred on September 3, 2013, Dr. Wilson, in answering a question about what, if any, injury claimant sustained on September 3, 2013, stated that his review led to a conclusion that claimant suffered "at most[] a . . . cervical strain . . . ." The commission, as factfinder, was free to reject the majority of Dr. Wilson's opinion but accept his statement that the evidence could support a conclusion that claimant suffered a muscle strain on September 3, 2013. See Bazemore v. Commonwealth, 42 Va. App. 203, 213, 590 S.E.2d 602, 607 (2004) (A factfinder is "free to believe or disbelieve, in part or in whole, the testimony of any witness." (citation omitted)). Although there was conflicting medical evidence, the medical evidence, coupled with claimant's testimony, provided a sufficient basis for the commission to conclude that claimant suffered a sudden mechanical or structural change to her neck on September 3, 2013.

---

[9] We note that while there was medical evidence to support the commission's decision, it was unnecessary because the commission could have reached this conclusion based on the testimony of the claimant alone. Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996).

[10] Dr. Ofsa is the physician who oversaw Nurse Practitioner Walker.

[11] In treating claimant, Dr. Vascik initially concluded that she had a musculoskeletal strain. Dr. Vascik's January 19, 2014 answers to the questionnaire sent to him by claimant's counsel were not evidence before the commission and are only before us to the extent necessary to address employer's allegation that the commission abused its discretion in striking it from employer's designation and refusing to admit it into evidence.

<u>Causal Link Between the Injury and the Resulting Medical Treatment/Disability</u>

Employer challenges the commission's conclusion that the medical treatments for which she has received (and will continue to receive) benefits and the disability benefits she has been awarded are causally related to the September 3, 2013 injury by accident. As noted above, questions of causation are questions of fact. <u>Musick</u>, 7 Va. App. at 688, 376 S.E.2d at 817. Accordingly, we must uphold the commission's findings regarding causation if there is credible evidence to support them. <u>Snyder</u>, 62 Va. App. at 411, 748 S.E.2d at 653.

It is undisputed that claimant offered medical evidence to support a causal link between her injury and her resulting medical treatment and disability. Evidence offered through Dr. Swanson linked claimant's injury to the care received. Although employer has offered reasons that could cause a factfinder to discount the opinions of Dr. Swanson, the commission was free to weigh this evidence as it deemed appropriate. Because there is evidence in the record to establish a causal link between claimant's injury and the resulting treatment/disability that the commission found credible, we affirm the commission's ruling as to causation.

<u>Alleged Award of Medical Benefits for a Non-Claimed Body Part</u>

Employer asserts that the deputy commissioner awarded lifetime medical benefits to claimant for body parts other than the neck – the sole body part that was subject to the proceeding before the deputy commissioner. Employer then asserts that the commission "just affirmed the ruling without clarification." The record bears out neither assertion.

In its opinion affirming the award of benefits, the commission explicitly addressed employer's argument. Specifically, the commission rejected employer's premise, noting as follows:

> The [d]eputy [c]ommissioner entered an award of medical benefits
> for the neck only. He did not, as the defendants argue, award
> benefits for the shoulder. Rather, based upon Dr. Swanson's

- 17 -

> opinion, the [d]eputy [c]ommissioner found the muscle spasms in
> the neck were producing shoulder symptoms, and the neck injury
> encompassed an injury to the trapezius muscle, which produced
> symptoms in the neck and shoulder. We agree with this reasoning.

Because the commission's order expressly states that medical benefits are being awarded only for the neck injury while employer's assignment of error asserts something different, there is a question as to whether this issue is properly before us on appeal. We previously have held that this Court "cannot consider alleged error on a ruling the commission never made." Montalbano v. Richmond Ford, LLC, 57 Va. App. 235, 249 n.7, 701 S.E.2d 72, 79 n.7 (2010). Assuming without deciding that, despite the discrepancy between the commission's opinion and the assignment of error presented, the issue is properly before us, we find employer's argument lacks merit.

As the commission summarized, evidence the commission found credible supported the conclusion that claimant suffered a neck injury and that the neck injury caused sequelae in the neck and shoulder. Accordingly, it was appropriate for the commission to award medical benefits to treat the neck injury and the issues associated with it. Knott v. Va. Beach Mariners, Inc., No. 0634-09-1, 2009 Va. App. LEXIS 535 (Va. Ct. App. Dec. 8, 2009).

Employer argues that the injury specifically was to the trapezius muscle, and therefore, claimant was required to identify the trapezius muscle in her application for benefits as opposed to identifying her neck as the area of injury. We disagree.

It is undisputed that the trapezius is a muscle that extends from the neck to the shoulder. As such, it is fairly viewed as part of the neck. There is simply no support for employer's argument that claimant had to identify the specific muscle in her application as opposed to a generic description of the part of the body for which benefits are claimed. Corporate Res. Mgmt. v. Southers, 51 Va. App. 118, 131, 655 S.E.2d 34, 40 (2008) (*en banc*) (In filing an application, a

claimant is not "expected to know precisely where her scapular region ended and her cervical region began."). Accordingly, based on the commission's factual findings, the award of benefits was an award related to the neck, and therefore, appropriate.

Period of Total Disability

"[A] party seeking [workers'] compensation bears the burden of proving his disability and the periods of that disability." Marshall Erdman & Assocs. v. Loehr, 24 Va. App. 670, 679, 485 S.E.2d 145, 149-50 (1997). The issue of claimant's continued disability raises a question of fact. Hoffman v. Carter, 50 Va. App. 199, 216, 648 S.E.2d 318, 327 (2007). Accordingly, the commission's findings related to the duration of disability are binding upon this Court so long as they are supported by credible evidence. Ga. Pac. Corp., 17 Va. App. at 135, 435 S.E.2d at 902. Moreover, "[t]he fact that contrary evidence may appear in the record 'is of no consequence if there is credible evidence to support the commission's finding.'" Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 177, 468 S.E.2d 152, 155 (1996) (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

We find there is credible evidence to support the commission's award. For the period beginning September 3, 2013, and ending November 15, 2013, the commission was entitled to rely on Nurse Practitioner Walker's reports and the return to work slips. For the period beginning January 23, 2014 to the present and continuing, the finding of total disability was supported by Dr. Swanson's testimony regarding claimant's inability to perform daily tasks and perform the required tasks of her job safely.[12] Consequently, the commission's finding of total

---

[12] Employer argues that Dr. Swanson's diagnosis of total disability is entirely based on claimant's risk of injury. While re-injury alone is not grounds for a finding of total disability, Dr. Swanson testified to a variety of other concerns, including claimant's inability to perform routine tasks.

disability is supported by credible evidence and is, therefore, "conclusive and binding upon this Court." United Airlines, Inc. v. Hayes, 58 Va. App. 220, 237, 708 S.E.2d 418, 427 (2011).

In assigning error, employer primarily argues that the opinions of Dr. Swanson are incredible. Determinations of credibility, however, are reserved to the commission. Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 381, 363 S.E.2d 433, 437 (1987). On appeal to this Court, we are not permitted to "judge the credibility of witnesses or weigh the evidence . . . ." Celanese Fibers Co. v. Johnson, 229 Va. 117, 121, 326 S.E.2d 687, 690 (1985). Accordingly, we affirm the finding of the commission.

### Marketing of Residual Work Capacity

Employer argues that the commission erred in not ruling on claimant's duty to market her residual work capacity. Because the commission found her totally disabled, however, claimant was not required to prove that she made a reasonable effort to market her residual work capacity in order to receive disability benefits. See Starbucks Coffee Co. v. Shy, 61 Va. App. 229, 246, 734 S.E.2d 683, 692 (2012) ("[A] claimant under an award for permanent or temporary total disability is under no obligation to market her remaining work capacity." (citing Ga. Pac. Corp., 17 Va. App. at 134, 435 S.E.2d at 901-02)). Accordingly, we find no error by the commission with respect to this assignment of error.

### CONCLUSION

For the foregoing reasons, the decision of the Virginia Workers' Compensation Commission is affirmed.

Affirmed.