# CIRCUIT COURT OF PRINCE WILLIAM COUNTY

Travis Ayers

v.

Dale White et al.

December 1, 2008

Case No. CL83592

BY JUDGE ROSSIE D. ALSTON, JR.

This matter came before the Court upon Defendant Green Village Concrete, Inc.'s Demurrer, which was heard on November 7, 2008. The Court took the matter under advisement and considered the Plaintiff's Complaint and Defendant Green Village Concrete, Inc.'s Demurrer and Brief in Support of Demurrer. The issues before the court are (1) whether the Plaintiff has stated a cause of action in Count II of his Complaint that the Court may consider under Virginia Code § 65.2-303 and (2) whether the Plaintiff's common law tort action in Count III is barred by the exclusivity provision of the Workers' Compensation Act provided in Va. Code § 65.2-307.

Because this matter is before the Court on a demurrer, the Court will consider "all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the alleged facts." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 129 (2000) (internal citations omitted). A demurrer "does not admit the correctness of the pleader's conclusions of law." *Delk*, 259 Va. at 129 (citing *Ward's Equip., Inc. v. New Holland North America, Inc.*, 254 Va. 379, 382 (1997)). Rather, a demurrer "tests only the sufficiency of factual allegations to determine whether the pleading states a cause of action." *Welding, Inc. v. Bland County Serv. Auth.*, 261 Va. 218, 226 (2001).

 

*Facts*

On May 9, 2007, the Plaintiff, Travis Ayers, age 19, was working for Defendant Green Village Concrete, Inc. ("Green Village Concrete"). At that time, Green Village Concrete employed more than three employees. On the date in question, Green Village Concrete had a contract to perform work for K. Havnanian in Fairfax, Virginia, and Mr. Ayers was working at the job site pursuant to a request from Green Village Concrete. While uncovering weep holes with a pick, a piece of concrete flew up and struck Mr. Ayers in the eye. Mr. Ayers did not have access to safety glasses that day and, thus, was not wearing them. The impact of the concrete caused Mr. Ayers' eye to bleed and his vision to deteriorate. Mr. Ayers' eye bled for approximately twenty minutes. During this time, Mr. Ayers was given an ice pack and a t-shirt to clean up the blood. Approximately thirty minutes after the accident, Mr. Ayers was driven to Green Village Concrete's main office. There, Mr. Ayers told his supervisor that he needed medical treatment. Mr. Ayers' supervisor refused this request and responded that Mr. Ayers' eye looked fine and that Mr. Ayers did not need medical treatment. Mr. Ayers reported that he could not see and again requested that he be taken to a doctor. This request was also refused.

After leaving work on May 9, 2007, Mr. Ayers traveled to the house of his uncle, Dale White, where he requested Mr. White provide medical intervention. Mr. White also refused to help Mr. Ayers get medical treatment.

On May 10, 2007, Mr. Ayers returned to the K. Havnanian job site and worked approximately ten hours. During this time, he continued to experience difficulties with his eye, and on numerous occasions, Mr. Ayers requested medical treatment. Each time, his supervisor told him to continue working and refused to provide him access to medical care. That evening, Mr. Ayers returned home and once again asked Mr. White to provide him with medical care. Again, Mr. White refused to take his nephew to the doctor.

On the morning of May 11, 2007, Mr. Ayers advised his uncle that he was not going to work due to the excruciating pain in his eye. Mr. Ayers pleaded for medical treatment, and Mr. White finally agreed to take him to the doctor. By the time Mr. Ayers received medical care, his eye wound was infected and the retina of his eye was damaged. In his complaint, Mr. Ayers alleges that the damage to his retina resulted in the total loss of vision in the right eye and that this loss of vision is directly related to the delay in time between the injury and the provision of medical care.

Mr. Ayers filed the instant action against Green Village Concrete and Dale White on August 8, 2008. Count I of the Complaint alleges negligence by Dale White for breaching his duty to provide Mr. Ayers access to medical

care.[1] In Count II, Mr. Ayers alleges negligence *per se* on the part of Green Village Concrete. Mr. Ayers asserts that under Virginia Code § 65.2-303,[2] Green Village Concrete had a duty to provide medical care to employees injured during the course and scope of their employment, and that Green Village Concrete breached this duty by failing to provide Mr. Ayers access to medical care. Finally, in Count III, Mr. Ayers alleges general negligence on behalf of Green Village Concrete for their breach of the common law or statutory duty to provide employees access to medical care. In his Complaint, Mr. Ayers alleges joint and several liability against each of the named defendants and seeks judgment against the defendants for compensatory damages totaling $10,000,000.

### Analysis

The demurrer before the court essentially presents two issues:

I. Whether the Plaintiff has stated a cause of action in Count II of the complaint that this court may consider under Virginia Code § 65.2-303; and

II. Whether the Plaintiff's common law action in Count III of the complaint is barred by the exclusivity provision of the Workers' Compensation Act provided by Code § 65.2-307.

### I. The Application of Virginia Code § 65.2-303 to Count II of the Complaint

The Virginia Workers' Compensation Act applies to injuries by accident "arising out of and in the course of" an individual's employment. Va. Code Ann § 65.3-300; *Butler v. Southern States Cooperative, Inc.*, 270 Va. 459, 465 (2005). The Supreme Court of Virginia has previously held that "[w]hen an employee sustains such an injury, the Act provides the sole and

---

[1] This matter comes before the Court on a demurrer from Green Village Concrete; therefore, this opinion will not further discuss the allegations raised in Count I regarding Mr. White.

[2] Virginia Code § 65.2-303 states: "A. Nothing in §§ 65.2-302 and 65.2-304 shall be construed as preventing a worker from recovering compensation under this title from a subcontractor (as described in § 65.2-302) instead of from the principal contractor (as described in § 65.2-302) but he shall not collect from both. B. When compensation is claimed from or proceedings are taken against the owner or contractor (as described in § 65.2-302), then, in the application of this title, reference to the owner or contractor shall be substituted for reference to the subcontractor (as described in § 65.2-302), except that the amount of compensation shall be calculated with reference to the earnings of the worker under the subcontractor by whom he is immediately employed."

exclusive remedy available against the employer." *Id.* (citing *Rasnick v. Pittston Co.*, 237 Va. 658, 660 (1989)). The Supreme Court of Virginia's ruling reflects the exclusivity provision of the Workers' Compensation Act. Section 65.2-307(A) of the Virginia Code provides that:

> The rights and remedies herein granted to an employee when his employer and he have accepted the provisions of this title respectively to pay and accept compensation on account of injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents, or next of kin, at common law or otherwise, on account of such injury, loss of service, or death.

The Virginia Code further states that it is the duty of the Workers' Compensation Commission to "administer [the Act] and adjudicate issues and controversies relating thereto." Va. Code Ann. § 65.2- 201(A).

In Count II, Plaintiff alleges that as a direct and proximate result of Defendant's violation of § 65.2-303, Mr. Ayers developed an infection in his eye that was not timely treated and, as a result of this failure to provide medical treatment, Mr. Ayers lost his vision in that eye.

The Plaintiff has pointed to nothing in § 65.2-303 which acts as an exception to the exclusivity provision of the Workers' Compensation Act. The language in the Workers' Compensation Act is clear and explicit. Accordingly, the Court finds that the Plaintiff has not stated sufficient factual allegations in his pleading articulating a cause of action upon which relief may be granted.

II. *The Exclusivity Provision of the Workers' Compensation Act and Its Application to the Plaintiff's Common Law Action*

In Count III of the Plaintiff's Complaint, the Plaintiff alleges that Green Village Concrete had a common law or statutory duty to provide medical assistance to Mr. Ayers. As stated above, the Workers' Compensation Act provides the exclusive remedy to employees injured in accidents arising out of, and in the course of, their employment. The question before the Court in regard to Count III is whether Mr. Ayers' injury is (1) an injury by accident, (2) arising out of, and (3) in the course of, his employment. *See, Combs v. Virginia Elec. & Power Co.*, 259 Va. 503, 508 (2000).

An injury by accident occurs "when the injury appears 'suddenly at a particular time and place[,] and upon a particular occasion[;]' when it is 'caused by an identifiable incident[,] or sudden precipitating event[;]' and

when the injury results 'in an obvious mechanical or structural change in the human body'." *Id.* (quoting *Southern Express v. Green*, 257 Va. 181 (1999)). In determining whether an injury arises out of employment, the Supreme Court of Virginia has repeatedly found that an injury arises out of the employment "when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Id.* at 509 (citing the test found in *In re Employers' Liab. Assur. Corp., Ltd.*, 215 Mass. 497 (1913)). Finally, an accident occurs in "in the course of the employment" when it occurs "within the period of the employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling duties of his employment or engaged in doing something incidental thereto." *Id.* at 511 (quoting *Bradshaw v. Aronovitch*, 170 Va. 329, 335 (1938)).

The Supreme Court of Virginia has considered many cases applying the Virginia Workers' Compensation Act against general tort principles. One case is particularly instructive. In *Combs v. Virginia Electric & Power Co.*, 259 Va. 503 (2000), the plaintiff, Laura Lee Combs, an employee of Virginia Power, was participating in a voluntary lunch-time aerobics class arranged by Virginia Power for its employees. *Id.* at 506. During the class, Ms. Combs informed the aerobics instructor that she had a severe headache. *Id.* The instructor helped Ms. Combs lie down and reported the situation to Virginia Power's Employee Health Services ("EHS"). An EHS staff member checked on Ms. Combs and took her to the "quiet room," which was used by Virginia Power employees who became ill at work. *Id.* Virginia Power's policy was that, while the "quiet room" was occupied, an EHS staff member was to remain in the office and that the staff member must check on the employee at regular intervals. *Id.*

Ms. Combs was not examined by any medical professionals, nor did the EHS staff member monitor her condition. *Id.* When a staff member did check on Ms. Combs approximately two hours after she entered the "quiet room," Ms. Combs had vomited on herself and was non-responsive. *Id.* Ms. Combs was subsequently taken to the hospital, where she was diagnosed with an aneurysm, which left her partially paralyzed with cognitive brain damage. *Id.* at 506-07. Ms. Combs filed a motion for judgment against Virginia Power and four of its employees, alleging that the defendants owed her a duty to "have in place proper procedures, and to properly train . . . personnel, so that employees using EHS could do so without harm to themselves and detriment to their well-being." *Id.* at 507 (internal citations omitted). Ms. Combs also asserted, among other things, that Virginia Power was liable for their failure to provide proper medical care and treatment to Ms. Combs when she suffered a medical emergency. *Id.*

The Supreme Court of Virginia sustained the Special Plea in Bar, which relied on the Workers' Compensation Act, filed by the defendants. The Court concluded that Ms. Combs' injury was an injury by accident, arising out of, and in the course of, her employment by Virginia Power, and thus, her action was subject to the exclusivity provision of the Workers' Compensation Act. *Id.* at 512. In determining that Ms. Combs' injury was an injury by accident, the Supreme Court emphasized that Ms. Combs' injury "resulted from the alleged negligent medical care, or lack thereof, that she received from Virginia Power and its EHS employees after suffered a severe headache during the aerobics class." *Id.* at 508. The Court found that the particular time, place, and occasion of her injury was at the Virginia Power office, that the alleged precipitating event was the alleged negligent emergency medical care while at the Virginia Power Office, and that the paralysis and brain damages suffered by Ms. Combs were the mechanical and structural changes resulting from her injury. *Id.* at 508-09.

The Supreme Court held that Ms. Combs' injury arose out of her employment and concluded that a causal connection existed between the conditions under which Ms. Combs worked and her resulting injury. Ms. Combs had alleged in her motion for judgment that Virginia Power owed certain duties to protect her well-being. *Id.* at 510. The Court found that Ms. Combs was exposed to risk of allegedly negligent emergency medical treatment by EHS personnel, solely because she was a Virginia Power employee. In finding that Ms. Combs' injury arose out of her employment, the Court also considered the fact that Ms. Combs alleged that the defendants "were acting within the scope of their employment when they allegedly injured her." *Id.*

Finally, the Supreme Court held that Ms. Combs' injury occurred in the course of employment because it took place at Ms. Combs' place of business and the only reason that Virginia Power employees responded to her request for assistance was because she was a Virginia Power employee. *Id.* at 511-12. The Court found that Ms. Combs was injured "at a place where she was reasonably expected to be while engaged in an activity reasonably incidental to her employment." *Id.* at 512 (quoting *Briley v. Farm Fresh, Inc.*, 240 Va. 194, 198 (1990)).

The case presented by the Plaintiff herein in support of its position is inapposite here. The Plaintiff cites *Hilton v. Martin*, 275 Va. 176, 654 S.E.2d 572 (2008), in which the Supreme Court of Virginia reversed a circuit court decision sustaining the defendant's plea in bar because the plaintiff's sole remedy was the Workers' Compensation Act. In *Hilton*, the Court was presented with a special issue of whether assault by a fellow employee

constituted injury arising out of employment. The Court held that, where the assault is personal to the employee and not directed against him as an employee or because of his employment, the resulting injury does not arise out of employment. 275 Va. at 181 (citations omitted). Mr. Ayers does not allege that he was assaulted by a fellow employee, and, thus, the holding in *Hilton* is not applicable.

The instant matter is more closely analogous to *Combs*. Here, the Plaintiff alleges that his eye injury is the result of the negligent medical treatment (or lack thereof) by his employer. Like Ms. Combs, Mr. Ayers was at his employer's place of business — he was at the Green Village Concrete main office when he asked for assistance on May 9, 2007, and he was at either the main office or the job site when he asked for assistance on May 10. Moreover, unfortunately for Mr. Ayers, like Ms. Combs, Mr. Ayers suffered mechanical and structural changes to his eye because of his injury.

Like Ms. Combs, Mr. Ayers alleges that Green Village, as Mr. Ayers' employer, had a duty to determine or ensure that Mr. Ayers received medical treatment and that the employer did not comply with appropriate safety regulations and accepted practices. And finally, Mr. Ayers' injury occurred in the course of employment because he asked for medical assistance at his place of business, during working hours. There is no general duty to provide medical assistance to others in Virginia; therefore, Mr. Ayers must allege that he was owed medical assistance due to his status as a Green Village Concrete employee. There is no viable authority for this position.

## Conclusion

For the foregoing reasons, the Court sustains the Defendant Green Village Concrete, Inc.'s Demurrer in regard to Counts II and III of the Plaintiff's Complaint. Counts II and III are dismissed with prejudice.

The matter was well-argued and briefed and presented interesting legal issues for the court to consider. There was a good faith basis for each side to advocate their legal positions. Accordingly, each side shall be responsible for its own attorney's fees.