COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Malveaux and Senior Judge Frank
Argued at Hampton, Virginia

UNPUBLISHED

JILLIAN PANG

                                        MEMORANDUM OPINION* BY
v.       Record No. 1877-18-1             JUDGE ROBERT P. FRANK
                                          SEPTEMBER 24, 2019

AIR WISCONSIN AIRLINES AND
  ACE AMERICAN INSURANCE COMPANY

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Matthew J. Weinberg (Gunther Law Group, on briefs), for appellant.

W. Thomas Chappell (Brian L. Sykes; Vandeventer Black LLP, on brief), for appellees.

Jillian Pang ("claimant") appeals the decision of the Virginia Workers' Compensation Commission ("Commission"), which held that claimant did not prove that she suffered a compensable injury or contracted an occupational disease/compensable ordinary disease of life as a result of her employment as a flight attendant with Air Wisconsin Airlines ("employer"). We affirm the Commission's decision.

BACKGROUND

On appeal, this Court views the evidence in this case in the light most favorable to the employer, the party prevailing before the Commission. See Samartino v. Fairfax Cty. Fire & Rescue, 64 Va. App. 499, 502 (2015). On April 22, 2015, claimant flew with the captain and first officer from Columbia, South Carolina to Norfolk, Virginia on an airplane operated by employer. The plane was being taken to Norfolk for repairs because the warning light for the

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

service door turned on even though the door was properly sealed. The Federal Aviation Administration (FAA) issued a special flight permit (a ferry permit) for the plane to travel to Norfolk, and only the three crew members were onboard. Even though there were no pressurization issues inside the aircraft, the plane was not pressurized on the flight as a safety precaution. Two air conditioning packs supplied air to the plane during the entire flight, and the plane did not exceed 10,000 feet in altitude.

Claimant testified at the hearing before the deputy commissioner in July 2018 that she experienced severe headache and earache on takeoff, but the pain stopped when the plane reached its top altitude. She also said that during the flight's descent, she experienced considerably worse pain in her ears and head, and the pain did not subside on landing. She said that she had not experienced that reaction on previous flights. She admitted on cross-examination, however, that she had been treated for anxiety and ear issues prior to April 22, 2015. Claimant subsequently sought medical treatment for multiple physical problems that she alleged resulted from the flight, including headache, earache, jaw and neck pain, multi-level back pain, numbness, tingling of hands and feet, chest pain, bowel and bladder dysfunction, difficulty thinking and speaking, problems concentrating and focusing, anxiety, and depression.

Claimant received $4,238 in disability benefits through a policy employer maintained on all employees. She filed claims for benefits from the Commission in June 2015, October 2016, and November 2017. She alleged that she developed decompression illness after a ferry flight of a "malfunctioned aircraft" due to an "air pressure problem of the aircraft" that caused a change in air pressure.

Claimant testified at the hearing that the gate agent in South Carolina informed her that the airplane had been sitting at the terminal for two weeks and that no captain was willing to fly it because of its damage. She said that the ground staff advised the crew not to fly the plane

because it was very risky and might have an accident. According to claimant, the captain told her that there was a small air pressure problem with the aircraft and the first officer told her that she should not scream until they landed. She said that the captain appeared nervous and afraid when he went into the cockpit. Claimant also testified that during the flight she observed an altitude meter reading of 11,000, which she photographed and showed to the captain, who informed her that the aircraft was set to stop at that altitude.

Dr. Florence V. Paragas, claimant's physician since 2009, testified that in her opinion claimant suffered decompression syndrome and that her medical condition was related to the incident of April 22, 2015. She opined that decompression sickness was the only explanation for claimant's symptoms, as "there really wasn't any other reason [she] should be having these pains." However, the doctor's notes from an office visit with claimant on October 28, 2014, indicated that claimant's "ongoing medical problems" were "decompression sickness, degenerative arthritis." The doctor examined claimant on May 27, 2015, and again on November 7, 2016. On cross-examination, she testified that she had not reviewed any medical records in anticipation of claimant's diagnosis and that her belief as to the events of the flight in question came solely from claimant.[1] The doctor agreed that the accuracy of the history and symptoms rested on claimant's statements to her. She admitted that she was not board certified and had no training in aviation.

Employer presented evidence that refuted claimant's evidence. Chief Operating Officer Robert Frisch testified that his review of the flight telemetry confirmed that the aircraft had not exceeded 10,000 feet and in fact had flown at approximately 9,000 feet.[2] He said that the

---

[1] Dr. Paragas later stated that she reviewed all the reports from the other physicians before the hearing with the deputy commissioner.

[2] The flight data report from the aircraft shows that it flew at 9,000 feet, with its highest altitude at 9,100 feet.

photograph of the altitude indicator taken by claimant actually did not say that the aircraft reached 11,000 feet and that claimant was misreading the instrument. Moreover, Frisch testified that the flight plan showed that the aircraft arrived in Columbia on the morning of April 22, 2015, and had not sat there for two weeks as contended by claimant. He stated that there were no issues with pressurization of the aircraft other than the malfunctioning warning light for the service door.[3] He testified that even when the cabin is pressurized, the aircraft feels like it is at 8,000 feet and the April 22, 2015 flight would have felt no different from a flight at normal altitude when the cabin is pressurized. He stated that it was very rare for lack of pressurization to be an issue under 25,000 feet and that "there's never been anything even remotely reported under 18,000 feet." He also said that neither the captain nor the first officer had indicated any discomfort about proceeding with the flight.

Employer's loss prevention manager, Brian Mollgaard, also testified that the investigation of claimant's allegations determined that the aircraft's altitude never exceeded 10,000 feet. Employer thus concluded no compensable injury occurred and rejected the claim.

Matthew Stewart, who was the captain of the flight, testified by video deposition that although the aircraft was not pressurized, air still came into the aircraft from air conditioning pack units. He stated that the aircraft flew at 9,000 feet and never went above 10,000 feet. He explained that the flight would have been like any other flight without pressurization problems because of the low altitude. Stewart recalled no unusual circumstances, problems, or concerns that occurred during the flight and was not aware of claimant expressing any complaints or distress. He denied claimant's accusations that he and the first officer were taking drugs during the flight.

---

[3] The aircraft's maintenance record indicated that the only maintenance problem was the service door. There was no mention of pressurization issues.

- 4 -

Employer submitted ninety-five different medical records for claimant. Dr. Lawrence Shall, an orthopedist, diagnosed claimant with lumbar and cervical spinal stenosis and regularly treated her with epidural steroid injections and physical therapy. The doctor acknowledged that claimant's neck and lumbar spine pain was not present before the flight on April 22, 2015, but he declined to give claimant "a note discussing her depressurization syndrome symptoms." On June 19, 2017, in response to specific questions from employer's attorney, Dr. Shall stated that he was "not an expert in high or low altitude medicine," but he opined that claimant's spinal degenerative disc issues that he "diagnosed and treated . . . predated any pressure changes in her airplane and were not as a result of the pressure changes."

Dr. Lisa B. Barr, of APM Spine & Sports Physicians PC, concluded that "while [claimant] has physical complaints and she has underlying degenerative changes I do not think that her stated complaints are attributable to her work injury in question. I believe she has . . . unrealistic expectations [about] the severity of her alleged work injury." Dr. Barr noted claimant's distressed and agitated mental state and "advised her that she really needs mental and emotional help." Dr. Barr told employer's counsel that claimant was "not rational" and "ha[d] significant psycho-emotional issues that made continued treatment in our office impossible." She said that she did "not see where [claimant] suffered an acute injury as a result of the sudden decompression injury in question." Dr. Barr stated that her discussion with claimant's physical therapist indicated that claimant "was very symptom focused and that she seemed to lack a clear understanding of her condition."

Dr. Catherine Ham examined claimant at employer's request. After reviewing claimant's entire medical record, the doctor opined that "[w]hile [claimant's] symptoms and diagnoses are reasonable, the assertion that these are due to an injury from decompression sickness is not. There is no reasonable scientific explanation for a connection between the event of April 22,

2015 and her degenerative joint disease, fibromyalgia, or headaches." Dr. Ham stated that claimant had none of the "decompression sickness hallmarks" and that "[h]er complaints are related to musculoskeletal chronic changes and are inconsistent with decompression sickness." She also noted that it would be "exceedingly rare" for someone to have decompression sickness "unless there is exposure above 18,000 feet" and that she relied on data from the FAA and peer-reviewed literature. She stated that she could not find any evidence of a neurological injury that occurred on April 22, 2015, and said that she "encouraged [claimant] to continue treatment for her degenerative spine disease as well as her other diagnoses but reassured her that these were not related to decompression sickness."

The deputy commissioner issued an opinion on July 5, 2018, finding claimant did not prove she suffered from a condition compensable under the Act. After reviewing claimant's testimony and that of employer's witnesses, the deputy commissioner determined claimant "did not testify with sufficient credibility to overcome the weight of the evidence." The deputy commissioner concluded that "[t]he remaining evidence demonstrates that [claimant] was not exposed to the conditions that she alleged in her testimony." He did not address the medical issues because he found that claimant failed to prove a compensable injury by accident.

The full Commission issued an opinion on November 5, 2018, affirming the deputy commissioner's decision. After reviewing the medical evidence, the Commission did not "afford controlling weight" to the testimony of claimant's treating physician, Dr. Paragas, finding that it was not conclusive and was contradicted by the medical opinions from Dr. Shall and Dr. Ham. Specifically, the Commission found that "Dr. Shall noted that the claimant's degenerative disc disease predated the alleged incident" and that "Dr. Ham found there is no reasonable scientific explanation for the connection between the event of April 22, 2015 and the claimant's joint disease, fibromyalgia and headaches." Further, after reviewing the testimony of Frisch, Stewart,

- 6 -

and Mollgaard, as well as maintenance records for the aircraft and the flight data report, the Commission concluded that employer presented extensive evidence contradicting claimant's allegations regarding the aircraft suffering from mechanical problems and exceeding the mandated altitude limit.

This appeal follows.

ANALYSIS

The issue on appeal is whether claimant proved that she suffered a compensable injury by accident, occupational disease or ordinary disease of life as a result of her work as an airline flight attendant on April 22, 2015. See Va. Dep't of Transp. v. Mosebrook, 13 Va. App. 536, 537 (1992) (stating that claimant must prove, by a preponderance of the evidence, that she sustained a compensable injury). Essentially, the issue is one of claimant's credibility, as the rulings of both the deputy commissioner and the Commission were premised on a credibility determination. As the appellant, claimant must demonstrate that the Commission's ruling was reversible error. See Burke v. Catawba Hosp., 59 Va. App. 828, 838 (2012).

"Whether an accident arises out of the employment is a mixed question of law and fact and is reviewable by the appellate court." Stillwell v. Lewis Tree Service, Inc., 47 Va. App. 471, 477 (2006) (quoting Cleveland v. Food Lion L.L.C., 43 Va. App. 514, 518 (2004)). "Accordingly, although we are bound by the [C]ommission's underlying factual findings if those findings are supported by credible evidence, we review de novo the [C]ommission's ultimate determination as to whether the injury arose out of the claimant's employment." Id.

Code § 65.2-706(A) provides that determinations made by the Commission "shall be conclusive and binding as to all questions of fact."

> Consequently, on appeal, "we do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses. If there is evidence or reasonable inference that can be drawn from the evidence to

support the Commission's findings, they will not be disturbed by this Court on appeal, even though there is evidence in the record to support contrary findings of fact." This deference to the Commission's factfinding necessarily requires [this Court to] construe the evidence in the light most favorable to the prevailing parties before the Commission.

Jeffreys v. Uninsured Employer's Fund, 297 Va. 82, 87 (2019) (quoting Caskey v. Dan River Mills, Inc., 225 Va. 405, 411 (1983)).

Questions regarding "the causation, nature, and extent of disability" are issues of fact.

United Airlines, Inc. v. Hayes, 58 Va. App. 220, 237 (2011).

To establish an "injury by accident," a claimant must prove (1) that the injury appeared suddenly at a particular time and place and upon a particular occasion, (2) that it was caused by an identifiable incident or sudden precipitating event, and (3) that it resulted in an obvious mechanical or structural change in the human body.

Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 171 (2001) (quoting Southern Express v. Green, 257 Va. 181, 187 (1999)).

Claimant argues that the Commission erroneously relied on employer's evidence that the plane's altitude during the flight did not exceed 10,000 feet in finding that she suffered no injury. Claimant asserts that she did not have to prove that the flight exceeded 10,000 feet or that the plane was unfit to fly, but only needed to prove that the plane's descent was an identifiable incident that resulted in pain in her ears and head. However, the basis of her claim for benefits was that changes in air pressure inside the aircraft caused her injury. The essence of employer's evidence was that nothing about the aircraft or the flight would have caused problems with the air pressure. Thus, to prevail on her claim, it was necessary for claimant to refute employer's evidence.

Other than claimant's testimony that she suffered head and ear pain during descent, no other evidence supports her claim. To the contrary, Captain Stewart testified, by deposition, that he had no recollection of claimant's complaining of any issues during the flight and that she did

not appear to be unwell. Evidence further indicated there were no pressurization problems because of the aircraft's low altitude. The deputy commissioner concluded that claimant did not establish that an incident occurred that caused a compensable injury by accident. The Commission concurred.

Claimant's argument rests entirely on her testimony, which both the deputy commissioner and the Commission found unworthy of belief in concluding that no incident occurred. Claimant, however, argues that an incident occurred because the medical evidence showed that she suffered an injury. Claimant's personal physician, Dr. Paragas, testified that claimant's physical symptoms were explained by a diagnosis of decompression sickness, but the Commission found that Dr. Paragas' testimony was contradicted by the opinions of Dr. Shall and Dr. Ham. Dr. Shall opined that claimant's orthopedic issues "predated any pressure changes in her airplane and were not as a result of the pressure changes." Dr. Ham indicated that claimant's symptoms were not due to an injury from decompression sickness.[4] "The fact that contrary evidence may be found in the record is of no consequence if credible evidence supports the [C]ommission's finding." Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229 (1991). Because credible evidence supports the Commission's finding that no incident occurred, we need not address the allegations of injury.

Claimant asserts the Commission erred in not addressing her anxiety and depression, which she contends is related to the plane's descent on April 22, 2015. We need not address this allegation because there was no incident from which a compensable injury derived. See Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 751 (2004) (holding that the doctrine of

---

[4] We note that all of the doctors' opinions relied solely on claimant's version of events, which the Commission rejected.

compensable consequences allows a claimant to recover for an injury that develops at a future time only if the injury resulted from an employment accident).

Claimant also contends that employer recognized her injury by paying disability payments. The record indicates that the disability payments were provided by employer to all employees and were not related to any workers' compensation claim. There is no evidence that the requirements to receive benefits under the disability policy were the same as under workers' compensation laws.

<u>CONCLUSION</u>

In summary, claimant's claim rose and fell on her own credibility, which the Commission rejected. We find no error in the Commission's decision and affirm the ruling.

<u>Affirmed.</u>